## COMMISSIONER OF INTERNAL REVE-NUE v. SHERMAN et al.

### No. 9223.

Circuit Court of Appeals, Sixth Circuit.

April 6, 1943.

Morton K. Rothschild, of Washington, D. C. (Samuel O. Clark, Jr., and Sewall Key, both of Washington, D. C., on the brief), for petitioner.

Guy H. Wells, of Dayton, Ohio (Well-more B. Turner and E. H. & W. B. Turner, all of Dayton, Ohio, on the brief) for respondents.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The Commissioner of Internal Revenue petitions for a review of the decision of the United States Board of Tax Appeals (now the United States Tax Court) holding that, in the circumstances of this case, no taxable income resulted to the decedent, John Q. Sherman, and his widow, Katherine M. Sherman, from the payment of a mortgage on real estate for less than the face amount of the mortgage indebtedness. The Commissioner of Internal Revenue had determined a deficiency of $20,548.57 in the income tax of the husband and wife for the year 1936; but the Board of Tax Appeals, upon redetermination, found that there was an over-payment of $17.21.

From the Board's findings of fact, duly supported, it appears that John Q. Sherman purchased improved city real estate, consisting of a four-story brick storeroom and office building, known as the Hamiel property, in Dayton, Ohio, for a consideration of $25,000 in cash and the assumption of an outstanding mortgage of $175,000 on the property. Subsequently, the unpaid purchase price was evidenced by the execution of a new note, payable by the decedent Sherman and his wife to the mortgage holder, Dayton Savings and Trust Co., secured by mortgage on the property purchased. This note and mortgage were acquired by Union Trust Company, and, in turn, by the Winters National Bank and Trust Co., by purchase, upon the liquidation of the Union Trust Co. by the Superintendent of Banks of Ohio.

On December 15, 1934, the Winters National Bank and Trust Co. brought suit against the Shermans in the Court of Common Pleas of Montgomery County, Ohio, seeking judgment on the unpaid balance of the note, together with interest, and praying foreclosure of the mortgage. The money judgment demanded against the decedent and his wife, as makers of the note, after crediting payments made on principal and interest, amounted to $174,438.47, plus interest from December 15, 1932. In their answer, the Shermans denied liability. They predicated their defense upon alleged fraudulent misrepresentations which induced them to purchase the property. They denied that the mortgagee and its successors were entitled to payment of the face amount of the mortgage. The Board of Tax Appeals found no lack of good faith in these defenses.

On May 29, 1935, the Union Trust Co., then in liquidation, reacquired the note and mortgage and, on September 21, 1935, the Superintendent of Banks of Ohio was substituted as party plaintiff for the Winters National Bank and Trust Co. In November 1935, the defendant Shermans filed a petition for removal of the cause to the United States District Court for the Southern District of Ohio. The petition for removal was allowed, but the United States

District Court remanded the cause to the state court.

Some three months before the suit for money judgment and foreclosure was instituted, compromise negotiations for settlement of the liability of the makers of the note had been set in motion; but these negotiations were discontinued upon the filing of the suit. When the cause was ready for trial, the negotiations were resumed with the result that a compromise settlement was consummated.

This settlement was reached upon the basis of terms set forth in a letter of January 29, 1936, from the Shermans to the Superintendent of Banks. This letter recited that, at the time of the purchase of the property, its actual value was considerably less than the purchase price agreed upon, and that this fact had been concealed from the decedent and his wife by misrepresentation as to the amount of the income productivity of the building. Other material misrepresentations were charged. The Shermans offered to compromise the suit by payment of accrued interest on the note in the amount of $35,534.08 and satisfaction of the unpaid balance of the principal amount of $174,438.47, by a cash payment of $64,465.92 and assignment of certificates of claim against the Union Trust Co., of the face value of $109,972.55. The statement was made in the letter that "the Shermans [the taxpayer and his wife] will carry upon their books the Hamiel property at $135,894.35 in order to effect this compromise; this book value being comprised of the original $25,000 in cash paid by the Shermans to the seller in 1929, plus the $110,894.35 compromised payment on principal pursuant to this offer."

The Superintendent of Banks considered the settlement terms offered acceptable and, in applying for court approval, revealed that the makers of the note were solvent but were denying and contesting their liability; that litigation had been pending for more than a year and would continue to pend indefinitely; that the defendants would appeal should a decision be rendered against them in the Court of Common Pleas; and that it would be expensive to conduct prolonged litigation: from all of which the Superintendent stated his conclusion that a compromise settlement would be to the best interest of the depositors and creditors of the Union Trust Co. The state court approved the compromise settlement and the Superintendent of Banks, on February 19, 1936, accepted the offer contained in the letter of January 29, 1936, addressed to him by the decedent and his wife. Suit was, accordingly, dismissed on July 21, 1936.

The certificates of claim against the assets of the Union Trust Co., which were used to effectuate the compromise settlement, had been issued to its depositors for the face amount of their bank balances by the banking department of the State of Ohio. At the time of the settlement, these certificates, which were traded in on the open market, had a fair market value of fifty-five per cent of their face value. The Board of Tax Appeals found that the cost basis to the decedent taxpayer of the certificates of claim applied by him in consummation of the settlement agreement was $46,194.80. The Board found, further, that as a matter of fact, at the time the settlement was concluded, the fair market value of the real property involved was not in excess of $73,360.

The Commissioner of Internal Revenue determined that the use of the certificates of claim in satisfaction of mortgage indebtedness resulted in capital gain as limited under Section 117(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 873. As previously indicated, the Board of Tax Appeals reversed this ruling and found no deficiency.

Though the Commissioner had determined that the taxpayers realized capital gains through using the certificates of claim in settlement of the litigation in an amount equivalent to the difference between the cost of the certificates of claim and the face value of the mortgage liquidated with the certificates of claim, the Commissioner, in his present argument, takes the position that only the difference between the fair market value of the certificates at the time of the settlement (by his calculations, $60,484.90) and the cost of the certificates purchased by the taxpayers ($46,194.80) constitutes the taxable gain to the taxpayer in the amount of $14,290.10. Hormel v. Helvering, 312 U.S. 552, 559, 61 S.Ct. 719, 85 L.Ed. 1037, would seem to support the right of the Commissioner to change his position.

The Commissioner sets up the proposition that where a taxpayer transfers property in discharge of an indebtedness, taxable income is realized by him to the extent of the difference between the indebtedness discharged and "the basis of the property in his hands." He cites as author-

ities for his proposition: Kenan v. Commissioner, 2 Cir., 114 F.2d 217; M. F. Redding-ton Co. v. Commissioner of Internal Revenue, 2 Cir., 131 F.2d 1014; Commissioner of Internal Revenue v. Mesta, 3 Cir., 123 F.2d 986; and Lakeside Irr. Co. v. Commissioner of Internal Revenue, 5 Cir., 128 F.2d 418. These cases are distinguishable from the instant case, in that here the taxpayers purchased and used the certificates of claim at the precise price which they paid for the certificates, without profit to themselves, in reducing a loss sustained by the taxpayers on an entire transaction involving the purchase of the improved real estate.

As was found by the Board of Tax Appeals, the mortgagee bank, in accepting as part payment of the indebtedness certificates of claim worth only fifty-five per cent of face value, recognized a reduction in the original price of the property, constituting neither the mere purchase of a debt for less than the face amount thereof, nor a voluntary forgiveness of indebtedness. It was pointed out by the Board that the taxpayers had actively contested the lawful right of the mortgagee to demand full payment of the face amount of the mortgage, by reason of misrepresentations made in connection with the purchase of the property; that the offer of settlement disclosed an intent to regard the adjustment as a reduction in the selling price of the property, inasmuch as the letter from the taxpayers had recited that the property would be carried on their books at $135,-894.35. The Board considered that, regardless of whether the minds of the parties met upon the exact nature of the transaction, the effect was that the decedent and his wife acquired unincumbered title to property for a price less than the original amount bargained. The Board stated:

"The final payment of cash and certificates or claim completed the transaction and, viewing it as a whole, there was no gain, since the property at that time was worth less than the unpaid amount of the mortgage. The effect of the whole transaction was a reduction in the purchase price of the property."

In the judgment of this court, the reasoning of the Board of Tax Appeals is sound, and its decision correct.

Hirsch v. Commissioner of Internal Revenue, 7 Cir., 115 F.2d 656, bears analogy to this case. In that case, where a taxpayer had in 1928 purchased real property for $29,000, paying $10,000 in cash and assuming mortgage indebtedness of $19,000, which was reduced to $15,000 by 1936, at which time the property had depreciated in value to $8,000 and the taxpayer obtained release of the mortgage for $8,000 cash, the voluntary reduction of the mortgage indebtedness to the extent of $7,000 was held not to constitute taxable income to the taxpayer. The Court of Appeals reasoned that the taxpayer received nothing of exchangeable value, but only a credit upon the cost of a capital investment, and merely entered into a transaction whereby he procured a decrease in his capital loss. See, also, Hextell v. Huston, Collector of Internal Revenue, D.C., 28 F.Supp. 521.

The principle applied in Bowers, Collector v. Kerbaugh-Empire Company, 271 U. S. 170, 46 S.Ct. 449, 70 L.Ed. 886, indicates clearly that the decision of the Board of Tax Appeals should be upheld. In that case, where the taxpayer had borrowed money from a bank in Germany before the Great War, repayable in marks or their equivalent in gold coin of the United States, had subsequently lost in business the money borrowed and had repaid the loan to the Alien Property Custodian at a time when marks had suffered severe depreciation, to an extent, however, less than the losses sustained by the taxpayer on the entire transaction, the Supreme Court held that the difference resulting from the depreciation in the value of the marks between the amount borrowed and the amount repaid in American money was not taxable as income to the taxpayer. The transaction was regarded as not resulting in gain from capital or labor, or in profit from the sale or conversion of capital, but in a loss to the taxpayer from the "whole transaction."

The case at bar does not come within the ambit of United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, for the reason that, there, a corporation merely purchased and retired a portion of its own bonds for less than their par value which it had received for them when issued. A transaction of that character is not remotely related to the transactions disclosed by this record. Likewise, Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891, is not in point. In both these decisions, the Supreme Court recognized as valid the principle applied in Bowers v. Kerbaugh-Empire Co., supra, pointing out that, in that case, the transaction, as a whole, had resulted in loss and not in

gain. Such is likewise the critical fact in the instant controversy.

The decision of the Board of Tax Appeals is affirmed.