### FIFTH AVENUE–FOURTEENTH STREET CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

No. 42.

Circuit Court of Appeals, Second Circuit.

Dec. 18, 1944.

As Modified on Denial of Rehearing Jan. 4, 1945.

456

Harry Friedman, of Washington, D.C., for petitioner.

Samuel O. Clark, Jr., of Washington, D. C. (Sewall Key, A. F. Prescott, and Harold C. Wilkenfeld, all of Washington, D. C., of counsel), for respondent.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ 1. Assuming for the moment that we must accept the facts as found by the Tax Court, affirmance is required by United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 75 L.Ed. 131. For, on those facts, here, as there, the taxpayer "as a result of its dealings made available * * * assets previously offset by the obligation of bonds now extinct." The transaction gave rise to income which was then "realized," and therefore taxable, because the taxpayer then relieved all its assets in an amount equal to the difference between the amount of its obligations payable out of those assets and the reduced figure at which it paid off those obligations. The mortgage indebtedness was not merely a lien upon specific property, but a liability owing by the taxpayer. This is therefore not like a case where property is purchased subject to a mortgage on which a taxpayer is not liable; in such a case, if the taxpayer pays off the mortgage for less than its face, he has not realized any income but has merely reduced the amount paid for the property, so that no income is realized until he subsequently sells the property.[1]

Helvering v. American Dental Company, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785, reaffirmed the Kirby doctrine.[2] It made an exception, not pertinent here, i.e., where a taxpayer procures "the complete satisfaction of an indebtedness by partial payment by the voluntary act of the creditor * * *," and not "through the purchase" of its obligation "in an arm's-length transaction"; because in the American Dental case the reductions thus resulted from the voluntary acts of the creditors and not from "arm's-length transactions," the Court held that they constituted "gifts" by the creditors.

■ 2. Taxpayer asserts that the mortgage indebtedness was incurred in connection with the purchase of the mortgaged property. There is grave doubt, to say the least, whether the evidence so shows. But, in any event, that fact is irrelevant. To be sure, some cases have held that the doctrine of the Kirby case is inapplicable where the reduced indebtedness is a purchase money obligation, i.e., one incurred by the taxpayer in acquiring property.[3] We con-

[1] Cf. Helvering v. American Chicle Co., 291 U.S. 426, 430, 54 S.Ct. 460, 461, 78 L.Ed. 891, where, as the Court said, the taxpayer "assumed—promised to pay— * * * the seller's outstanding bonds."

Of course, in such a case as is described in the text of the opinion the "basis" when the taxpayer sells the property is reduced by the amount of the debt reduction, whereas in the instant situation, it will not be so reduced.

[2] The Court said, 318 U.S. 322 at page 327, 63 S.Ct. 580, 87 L.Ed. 785: "In United States v. Kirby Lumber Co., 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, the taxpayer purchased its own bonds at a discount. It was held taxable on the increase in net assets which resulted. This holding was confirmed by Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891. See, also, Commissioner [of Internal Revenue] v. Coastwise Transp. Corporation, 1 Cir., 71 F.2d 104."

[3] Commissioner of Internal Revenue v. Sherman, 6 Cir., 135 F.2d 68; Helvering v. A. L. Killian Co., 8 Cir., 128 F.2d 433; Hirsch v. Commissioner of Internal Revenue, 7 Cir., 115 F.2d 656.

sider such a distinction irrational, and doubt whether the Supreme Court intended to approve it by its passing mention of those cases in the American Dental case. At any rate, that distinction, if valid, is limited to a case of a purchase money obligation where the vendor-mortgagee, in negotiations directly relating to the purchase price, agrees to a reduction; it has not been applied where the reduction results from an "arm's-length" transaction relating solely to the debt itself,[4] or from a purchase of the taxpayer's obligations at less than par in the market.[5] Thus limited, the distinction is inapposite here; for the certificateholders were, in effect, the beneficial owners of the mortgage debt, and the taxpayer acquired the certificates in question from certificateholders in the open market.

■ 3. The taxpayer argues that it was not obligated to pay the mortgage debt in dollars; that it had the option of paying either in dollars or certificate; and that, where a person has the right to pay an obligation in one of two forms, as here, either by cash or by certificates, he receives no taxable income from the payment in certificates, despite the fact that he thereby pays less than he would have paid if he had chosen to pay in dollars. In support of this position, taxpayer relies on Bowers v. Kerbaugh-Empire Co., 271 U.S. 170, 46 S. Ct. 449, 70 L.Ed. 886. That case is not in point. It was distinguished in the Kirby case on the ground that no taxable income had resulted because "the transaction as a whole was a loss." See also Burnet v. Sanford & Brooks Co., 282 U.S. 359, 364, 51 S.Ct. 150, 75 L.Ed. 383; Helvering v. American Chicle Co., 291 U.S. 426, 430, 54 S.Ct. 460, 78 L.Ed. 891. We think that the Kerbaugh-Empire doctrine has been limited to its precise or to almost precisely equivalent facts.[6] The general rule must be that, if a taxpayer borrows money and has an option to repay either in money or in property, he realizes a taxable gain if he elects to pay in property which at the time has a value less than the face of his obligation.[7]

■ 4. Taxpayer also contends that its obligations to pay were not absolute but contingent. We cannot agree. Corporacion de Ventas, etc. v. Commissioner of Internal Revenue, 2 Cir., 130 F.2d 141 is clearly not in point; for there the obligations were payable only out of a certain percentage of profits if earned.

■ 5. The Supreme Court made the American Dental doctrine applicable regardless of the solvency or insolvency of the taxpayer, but clearly indicated (318 U.S. 322 at page 330, 63 S.Ct. 577, 87 L.Ed. 785) that where (as here) the Kirby doctrine applies, the taxpayer's insolvency is of importance. But we think that, in such circumstances, insolvency has this and only this effect: If the insolvent taxpayer "buys in" its debts, or any of them, for an amount equal to or greater than the amount which would have been paid to the creditors upon the taxpayer's liquidation, then there is no realized taxable gain; where, however, the taxpayer "buys in" its debts for less than such an amount, then, to that extent, there is realized taxable gain.

■ 6. The Tax Court found that in the taxable years the taxpayer was not

---

[4] Commissioner of Internal Revenue v. Coastwise Transp. Corporation, 1 Cir., 62 F.2d 332, Id., 1 Cir., 71 F.2d 104, certiorari denied 293 U.S. 595, 55 S.Ct. 110, 79 L.Ed. 689.

[5] Helvering v. American Chicle Co., 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891, reversing 65 F.2d 454, 455, where we had said: "When a taxpayer gets money by issuing an obligation which he later discharges for less than its face, the transaction is completed, because money need not be sold or exchanged to be 'realized.' So we read United States v. Kirby Lumber Co., supra, 284 U.S. 1, 52 S.Ct. 4, 76 L. Ed. 131. But if he buys property by an obligation in the form of a bond, note, or the like, and if it remains in kind after the debt is paid, there can be no 'gain.'

The cost has indeed been definitively settled, but that is only one term of the equation; as long as the other remains at large, there is no 'realized' gain."

[6] The government suggests that it applies only to cases in which foreign money was borrowed and repaid, the rate of exchange having fluctuated in the interim. We need not decide whether that suggestion is correct.

[7] Whether the certificates here were tendered to the trustee in the same year in which they were purchased is not entirely clear. Whether, if not, there would be any difference in the result we need not consider since in the Tax Court that question was not raised and on oral argument here both sides asked us not to consider it.

458

insolvent.[8] There is substantial evidence to sustain this and the other findings, and we would therefore affirm except for the following: The court's finding as to solvency turned on its finding as to the value of taxpayer's land and building, and the court expressly said that it arrived at that latter finding after considering all the evidence "including the opinions of the expert witnesses of both parties." Taxpayer complains that the Tax Court erred in shutting out an inquiry affecting the competence or credibility of one of the government's experts. The facts are these:

At the trial, a witness for taxpayer testified that the fair market value of the taxpayer's land and building in 1935, 1936 and 1937 was "less than $600,000 for sale purposes." A witness, Warner, Assistant Manager of the Mortgage & Loan Department of the Aetna Life Insurance Company, called by the government, testified that that company made a mortgage loan to taxpayer on its land and building in 1937 in the amount of $600,000, and that, before doing so, it had obtained the appraisal of the firm of Brown, Wheelock, Harris & Stevens, Inc., expert real estate appraisers who had valued the property at $1,200,000. The government then called Stevens, a member of that firm, who testified that such an appraisal had been been made with his approval, the land having been appraised at $700,000 and the building at $500,000. On cross examination, he stated that he did not have with him the certificate of appraisal that was issued but that he did have with him his working papers. He also said that he had testified from those papers which showed the figures to which he had testified and the "break-down" which he had made; and that they related to the testimony which he had given on direct; and that they showed the basis upon which he had made his appraisal. Counsel for taxpayer asked to examine the papers, but the request was denied. On direct examination, in response to certain specific questions, Stevens had used the papers to refresh his recollection as to matters not directly bearing on the appraisal.[9] But his entire testimony leaves little doubt that, in the course of his direct examination, he had used those papers to refresh his recollection concerning the appraisal. We think it was clearly improper to deny the request of the taxpayer's counsel and that, in the circumstances, considering the high appraisal figure to which the witness testified and the importance of the valuation issue, there was an abuse of discretion in this respect. We therefore remand for the limited purpose of permitting taxpayer to scrutinize the witness' papers and to cross examine him with respect thereto.[10] Should the Tax Court, as a result of such cross examination, find that the taxpayer was insolvent in the pertinent period, it should apply the criterion above stated in point 5 of this opinion.

Reversed and remanded for further proceedings in accordance with this opinion.

---

[8] Taxpayer asserts that even if not insolvent, it was in financial difficulties; but financial difficulties which are not the substantial equivalent of insolvency are, we think, irrelevant. Cases arising under the Revenue Act 1939, 26 U.S.C.A. Int.Rev. Acts, page 1167, and later Acts are not in point. Moreover the evidence, we think, does not show that the taxpayer was in any serious financial difficulties in the pertinent period.

[9] At one point he consulted the papers to determine whether he himself had inspected the building and at another as to whether or not the papers disclosed the name of the company to whom application had been made for a mortgage loan by the taxpayer.

[10] Pursuant to the stipulation of the parties, the Tax Court, on the remand of these proceedings, shall also, however, make a determination of the deficiencies, if any, due by reason of the reduction of the amounts deducted for real estate taxes for the years 1935, 1936 and 1937 which had been previously allowed.