**COLEMAN CO., Inc. v. GRAY et al.**
No. 4223.

United States Court of Appeals
Tenth Circuit.

Oct. 20, 1951.

Wayne Coulson, Wichita, Kan. (George B. Powers, Howard T. Fleeson, Homer V. Gooing, Wayne Coulson and Paul R. Kitch, all of Wichita, Kan., on the brief), for appellant.

Emmet A. Blaes, Wichita, Kan. (Bob Huff, Lamesa, Tex., Emmet A. Blaes and Robert G. Braden of Jochems, Sargent & Blaes, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

The Coleman Company, Inc.,[1] is the manufacturer of an iron, heated by the combustion of gasoline vapor, for smoothing or pressing cloth. Cleta S. Gray, the purchaser of one of such irons, and A. L. Gray, her husband, brought this action against Coleman to recover damages for burns suffered by Cleta S. Gray when gasoline vapor and gasoline escaped from the purchased iron and became ignited.

The iron proper consists of a solid base and a hollow upper portion. In the hollow upper portion there is positioned a burner manifold and a generator. A bracket extends from the rear of the iron proper. On the bracket is mounted a gasoline fount or container. At the top of the fount is a filler plug. Inside the filler plug is a means through which air is injected into the fount and by which air and vapor are held from escaping from the fount. Such means is composed of two members, the upper, a screw-type needle with a wheel-shaped top and an interior channel through which the air is injected, and the lower, a tube with a valve seat at its upper end and retaining stakes at its lower end. Air passes through the tube channel into the fount, and a ball check moves in such channel. The function of the needle valve is to open and close the air intake. The function of the ball is described infra.

After the fount is filled with the proper amount of gasoline, the filler plug is inserted and tightened. The needle valve is then opened and air is pumped through the channel into the container with a simple hand pump. The needle valve is then closed. There is a lighting opening in the upper part of the iron proper. The heating unit is lighted by holding a lighted match near such opening and opening the generator by turning its valve wheel. Heat generates the gasoline and air mixture into vapor, which burns and heats the iron. A ball, or check body, is inserted in the tube channel. Three stakes at the lower end of such channel prevent the ball from dropping out. A small press operation indents the lower end of the tube and pushes the metal inwardly at the base of the tube and thus creates the three small stakes. When the needle valve is opened

1. Hereinafter called Coleman.

the movement of the air or vapor under pressure toward the opening causes the ball to move upward and to substantially close the opening and prevent the escape of gasoline vapor or air from the fount. When the needle valve is opened, if the ball operates normally only a small amount of vapor will pass the ball; and if ignited, the escaping vapor will produce a flame not more than an inch in height.

The wheel on the needle valve is positioned in line with the iron handle, approximately 5/8 of an inch higher and 1 1/2 inches behind the rear end of the handle.

During the normal operation of the iron the heat builds up considerable pressure inside the fount in addition to that produced by the air pumped in the fount, so that the inside pressure is considerably greater than the outside atmospheric pressure.

Recovery is predicated on defective manufacture and negligent failure to properly inspect. It was alleged that there was an obstruction in the tube channel in which the ball moved, which at times would hold the ball and prevent it from rising and closing the aperture to prevent escape of air, vapor and gasoline; that the defect was latent and concealed and incapable of being observed or discovered by Cleta S. Gray, and that Coleman negligently failed to discover the defect by proper inspection.

After the staking operation is completed a rod is forced into the tube channel against the ball to ascertain if it will move in the channel. After the staking operation is completed, however, the manufacturer makes no inspection of the face of the stakes.

On the day of the accident, Cleta S. Gray opened the needle valve, placed the pump on the top of the hole at the upper end of the air intake and pumped five to ten strokes. Before taking the pump off, she closed the needle valve so no air would escape. After she lighted the iron, she opened the needle valve and pumped a few more strokes and firmly closed the needle valve. In so doing, she followed the manufacturer's instructions. She then used the iron for two and one-half hours. When she finished ironing, she set the iron on the stand and turned off the generator. Af-

ter folding some of the ironed material and placing it on a chair in the room, she returned to the iron to pick it up and carry it to the kitchen. She took hold of the handle, but had not lifted the iron from the stand, when vapor escaping from the upper end of the air intake ignited and burned her arm and face. Because of her fear of injury to her six-year-old child, she returned to the iron, but the fire from the iron ignited her clothing and caused additional burns. The iron made a hissing sound. The needle member was found separate from the iron the next day.

Cleta S. Gray testified that she closed the needle valve firmly after she pumped air into the fount the second time; that she did not thereafter knowingly touch the needle member.

The iron was reassembled and turned over by the plaintiffs to their expert witness. He made experiments to determine the amount of force necessary to open the needle valve after it had been screwed down tight. He testified he found that the amount of force on the edge of the wheel necessary to open the valve varied from .928 pounds to 2.32 pounds.

The expert further testified that he made tests; that in 10,000 experiments the ball stuck 348 times; that it stuck on the stakes at the lower end of the channel; that he examined the stakes under a microscope and found indentations and ridges on the stake faces, caused by the drilling operation that produced the channel before the stakes were made, which caused the ball to stick in the stakes.

Cleta S. Gray purchased the iron late in the year 1947. She had theretofore owned and used two of such irons. She purchased the first iron in 1937. She made several attempts to light the iron, but was unsuccessful. She returned it to the dealer. Later he returned it to her, telling her it would operate and that he had done nothing but pump it up. She used it a few days later and it operated normally, except it was unusually hot. It was following this use of the iron, and about one week later, that the accident occurred. It was an inferable fact that she was unsuccessful in pumping air into the iron when she first attempted to use

it. That circumstance, together with other evidence adduced, warranted the inference that the ball did not then operate normally.

The jury returned a general verdict for the plaintiffs. Judgment was entered on the verdict and Coleman has appealed.

We are of the opinion that under the evidence the jury was warranted in finding that the ball did not function to prevent vapor and gasoline from escaping in substantial quantities through the air channel at the time of the accident; and that such fact, the testimony of the expert witness for the plaintiff, who tested the checking device after the accident, and the testimony with respect to inspections made, warranted the jury in concluding that the ball channel and stakes were defectively constructed and that such defect caused the ball to stick and not to function normally to prevent substantial quantities of vapor and gasoline from escaping through the air channel, and that Coleman was guilty of negligence in not properly inspecting the device after the pressing operation, which created the stakes and forced them into position, was completed.

The device was designed to prevent, through the ball check, the escape of air, vapor and gasoline when the needle valve was opened. The instructions contemplated the refilling of the fount with gasoline and the introduction of air while the iron was hot. Moreover, Coleman must have known that the needle valve might be inadvertently opened during an ironing operation, because it could be opened by the exertion of slight force against the wheel.

Liability in such cases is predicated upon the principle that where the thing when put to the uses for which it is intended by the manufacturer, by reason of defects which were known or could have been known by the exercise of reasonable care by the manufacturer, is dangerous to life and limb, the manufacturer is liable to third persons for injuries caused by such defects.[2]

The evidence established that Cleta S. Gray did not intentionally open the ncede valve after she made the second insertion of air and closed the valve. It seems obvious to us that the needle valve was opened by the inadvertent application of force thereto, but whether Cleta S. Gray failed to exercise that degree of care under the circumstances which a person of ordinary prudence would have exercised was clearly a question for the jury, and was submitted to it under proper instructions. Moreover, the proximate cause of the injuries was not the prior opening of the needle valve, but the failure, due to defects in the stakes, of the ball to function normally and prevent the escape of vapor and gasoline. The purpose of the checking device was to prevent such escape, whether the needle valve was opened intentionally or inadvertently.

During the trial it developed that the expert witness for plaintiffs had made a confidential written report of his investigation to counsel for the plaintiffs. Counsel for Coleman requested that they be permitted to examine such report. The court refused the request. The expert witness did not use the report to refresh his recollection while testifying. For that reason the authorities[3] relied on by Coleman are not applicable here, and the request was properly denied.

The court refused to give the following instruction requested by Coleman: "You are instructed that a litigant is bound by his or her testimony and may not recover or defend on a theory in conflict with such testimony even though supported by other evidence, circumstantial or direct."

We find nothing in the testimony of Cleta S. Gray which would defeat her claim. True, she testified that she did not knowingly open the needle valve after she had closed it, but the physical facts demonstrated that the needle valve had become open and it was a reasonable inference that

2. Spencer v. Madson, 10 Cir., 142 F.2d 820, 823.

3. Atchison, Topeka & S. F. R. Co. v. Hays,

8 Kan.App. 545, 54 P. 322; Fifth Avenue-Fourteenth Street Corp. v. Commissioner, 2 Cir., 147 F.2d 453.

she inadvertently exerted sufficient pressure against the wheel to open the valve. Her statement that she did not knowingly open it was not inconsistent with the inferable fact that she inadvertently opened the needle valve.

The judgment is affirmed.