**James H. SUTPHIN and Louise D. Sutphin, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 49–87T.**

United States Claims Court.

April 6, 1988.

---

John P. Rice, Jr., Cleveland, Ohio, for plaintiffs.

C. Robson Stewart, with whom were Asst. Atty. Gen. William S. Rose, Jr., Mil-dred L. Seidman, and W.C. Rapp, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This is a suit for refund of $4120.09 in federal income taxes, paid by plaintiffs James and Louise Sutphin for calendar year 1982. Both plaintiffs and defendant have filed motions for summary judgment. The only question before the court is whether the discounted prepayment of the taxpayers' mortgage constituted discharge of indebtedness income. Jurisdiction for this action is conferred upon the court by 28 U.S.C. § 1491 (1982).

## FACTUAL BACKGROUND

The undisputed facts of the case are as follows:

In March 1982, plaintiffs were indebted to Park View Federal Savings & Loan Association ("Park View") for $32,960.68. This figure represented the remaining principal amount due on a loan received by the taxpayers. The indebtedness was evidenced by a promissory note secured by a mortgage on plaintiffs' residence.[1] The note bore an interest rate of 8.5 percent per year on the unpaid balance of the note; a ten-year term remained on the note.

Park View offered to cancel the note and mortgage in return for payment of $24,-720.50 in March 1982. The discounted amount represented the fair market value of the note as of the date paid. Plaintiffs paid Park View $24,720.50 and received a cancelled note and a satisfaction of mortgage. Plaintiffs thus received a discount of $8240.17 for prepayment of the note—the difference between the face value of the note (remaining principal amount) and the amount paid by plaintiffs ($32,960.68 − $24,720.51 = $8240.17).

Plaintiffs filed a joint federal income tax return for 1982. This return did not report as income the $8240.17 discount received for prepayment of the note. The Commissioner of Internal Revenue determined that

---

1. Plaintiffs did not purchase their residence from Park View. They did not use it for business purposes and thus never depreciated it for federal income tax purposes.

the $8240.17 constituted discharge of indebtedness income to plaintiffs. Consequently, a $4120.09 tax deficiency was assessed against them. Plaintiffs paid the deficiency (plus interest) and filed a timely claim for refund. Plaintiffs' claim was disallowed in full on April 29, 1986. They filed suit here on February 2, 1987 to overturn the Commissioner's decision.

## DISCUSSION

The determination of whether a taxpayer must recognize income upon the prepayment of indebtedness for an amount less than the remaining principal owed on the debt has been addressed by many courts. This determination rests on the facts of the particular case. Both parties correctly contend that the substance, not the form, of the transaction controls. *Bowers v. Kerbaugh-Empire Co.*, 271 U.S. 170, 174, 46 S.Ct. 449, 451, 70 L.Ed. 886 (1926).

In *United States v. Kirby Lumber Co.*, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931), the Supreme Court announced the general rule that gross income includes income from the discharge of indebtedness. Section 61(a) of the Internal Revenue Code of 1954 [2] adopts this holding and defines gross income as "all income from whatever source derived." Section 61(a)(12) provides that gross income includes amounts received from the discharge of indebtedness. *Kirby Lumber* involved a corporate taxpayer that purchased its own bonds in the open market at a discount. After the purchase, the taxpayer retired the bonds. The Supreme Court held that a "taxpayer may realize discharge of indebtedness income by paying an obligation at less than its face value." *Kirby Lumber*, 284 U.S. at 3, 52 S.Ct. at 4. "The underlying rationale of this principle is that a reduction in debt without a corresponding reduction in assets causes an economic gain and income because assets are no longer encumbered." *Juister v. Commissioner*, 1987 Tax Ct. Mem.Dec. (P–H) ¶ 87,292.

Shortly after *Kirby Lumber*, the Supreme Court was asked to address a similar question, and reached the same result, in *Helvering v. American Chicle Co.*, 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891 (1934). In that case, the corporate taxpayer purchased the assets of another company and assumed liability for the seller's outstanding bonds as part of the purchase price. It subsequently purchased a considerable number of those bonds at less than their face value on the open market and argued that the discount received did not constitute income. The taxpayer contended that the later purchases should be treated as a reduction of the purchase price of the assets. Any gains would thus be recognized only on the ultimate disposition of those assets. The Supreme Court affirmed its decision in *Kirby Lumber*, holding that the taxpayer incurred a taxable gain on the repurchase of its bonds because it realized a decrease in liabilities without a corresponding decrease in assets; assets previously offset by the obligation of the bonds were made available as a result of the repurchase at less than face value.

This court recently addressed the issue of whether a taxpayer received discharge of indebtedness income when it purchased its own debentures for an amount less than the issue price of the debentures. *United States Steel Corp. v. United States*, 11 Cl.Ct. 375 (1986), *reconsideration granted in part (on other grounds) and denied in part*, 11 Cl.Ct. 541 (1987). The court followed the holdings of *Kirby Lumber* and *American Chicle*, concluding that "since USS purchased its debt at less than face value with the result that assets previously offset by those obligations were made available," USS clearly procured a gain. 11 Cl.Ct. at 380. Although the discount received by the taxpayers in the case at bar did not derive from the purchase of their own bonds or debentures, the fact scenario is analogous and, therefore, similar tax treatment is proper.

**2.** Unless otherwise indicated, all references contained herein are to the Internal Revenue Code of 1954 as in effect during 1982.

Accordingly, in the absence of a statutory or judicially-recognized exception to Code section 61(a)(12), a taxpayer who pays his debts for less than face value must recognize discharge of indebtedness income. *See Panhandle Eastern Pipe Line Co. v. United States,* 228 Ct.Cl. 113, 654 F.2d 35 (1981). Plaintiffs here borrowed funds from Park View and ultimately paid off the debt for $8240.17 less than the principal amount owed. This discount reflects the taxpayers' increase in assets (the increased unencumbered rights to their residence) without a corresponding liability.[3] Plaintiffs had thus received an accession to wealth that must be taxed.[4] Under the judicial definition set out in *Kirby Lumber* and its progeny, as well as under Code section 61(a)(12) and Treas. Reg. § 1.61–12(a) (as amended in 1980), the Sutphins received income from Park View's discharge of their indebtedness equal to the amount of the discount received.

Plaintiffs contend, however, that their transaction with Park View constitutes an exception to the general rule regarding discharge of indebtedness income. The only statutory provisions that could arguably be applied by plaintiffs to escape present recognition of discharge of indebtedness income from the discounted prepayment of their mortgage are Code sections 102 and 108. As explained below, however, the facts of the present case render both of these exceptions inapplicable.

Section 102 provides: "Gross income does not include the value of property acquired by gift...." In *Helvering v. American Dental Co.,* 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785 (1943), the taxpayers were released from part of their indebtedness for back rent and interest. The Court held that the cancellation of indebtedness was nontaxable as a gratuitous forgiveness of debt, "a release of something to the debtor for nothing and sufficient to make the cancellation here gifts within the statute." *Id.* at 331, 63 S.Ct. at 582. Although neither party contends that Park View intended to make a gift to the Sutphins, the court believes it appropriate to discuss this issue because gratuitous discharges of debt represent one exception to the general rule concerning discharge of indebtedness income.

The holding in *American Dental* has been limited and distinguished in many subsequent cases, including *Commissioner v. Jacobson,* 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949), also cited by plaintiff. *See also Marshall Drug Co. v. United States,* 118 Ct.Cl. 532, 540–41, 95 F.Supp. 820, 821–22 ("The *American Dental* doctrine has thus been limited; it does not apply if the transaction is in fact a transfer of the obligation for the best price available. It does not apply, it seems to us, to the case at bar. The cancellations here were not intended to be gifts. Gifts as a rule are on a personal basis. Plaintiff's creditors were in business.... These were business dealings. Each cancellation was the result of a creditor's individual business judgment. It was not a gift."), *cert. denied,* 341 U.S. 948, 71 S.Ct. 1015, 95 L.Ed. 1372 (1951). In *Juister v. Commissioner,* 1987 Tax Ct.Mem.Dec. (P–H) ¶ 87,292—a case that is factually indistin-

---

**3.** Plaintiffs do not allege that there was any decrease in the value of their property. Accordingly, plaintiffs could have paid Park View the $24,720.50 and theoretically remortgaged their residence for $32,960.68 (the remaining principal amount of the debt to Park View). Plaintiffs would thus have a windfall of $8240.17 and be in no worse position than they were before having paid Park View (except perhaps having a higher rate of interest on the new mortgage). This possibility evidences the value of the asset obtained by plaintiffs as a result of the below-face value discharge of debt.

**4.** A taxpayer does not include borrowed funds in his gross income, even though they increase his net assets, because the taxpayer has a corresponding liability to repay the loan. *United States v. Rochelle,* 384 F.2d 748, 751 (5th Cir. 1967), *cert. denied,* 390 U.S. 946, 88 S.Ct. 1032, 19 L.Ed.2d 1135 (1968). If the taxpayer satisfies his debt by paying less than the principal amount due, however, the unpaid amount (the discount) constitutes income because it makes available to the taxpayer assets previously offset by liabilities. *Michaels v. Commissioner,* 87 T.C. 1412, 1414 (1986). The net effect of such a transaction is that the taxpayer receives additional assets without any obligation to pay for them, thereby increasing his net worth.

guishable from the one at bar—the court stated:

In *Commissioner v. Jacobson*, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 [37 AFTR 516] (1949), the Supreme Court expressly abandoned the view that a release of "something for nothing" necessarily implied a gift, and instead adopted a "motive" test under which the presence or absence of donative intent on the part of the creditor becomes dispositive.

There can be no question here that this discharge of petitioners' indebtedness was not a gift. Savings and loan associations are in the business of lending money, and there is no evidence that by discounting this obligation Standard Federal intended a gift as that term is used in section 102. Standard Federal did not act with a detached and disinterested generosity arising from affection, respect, admiration, charity or like impulses. Rather Standard Federal's actions were taken for economic reasons. Standard Federal was able to rid itself of a low nine percent mortgage. Upon the payment by petitioners of the $29,399.29, Standard Federal had this amount to lend to others at a much higher interest rate thereby enhancing its profits.

Applying the motive test to the case at bar, there certainly is no evidence of donative intent on the part of Park View. Accordingly, plaintiffs cannot rely upon section 102 to exclude the amount of the discount from gross income.

Code section 108 provides for an additional exclusion from gross income for discharges of indebtedness that (1) occur in a title 11 bankruptcy case, (2) occur when the taxpayer is insolvent, or (3) constitute qualified business indebtedness. Clearly none of these requirements are met here. The taxpayers are solvent and have not used their residence for business purposes.

Furthermore, plaintiffs cannot rely upon Code section 108(e)(5) as an exception to the normal discharge of indebtedness rule. Section 108(e)(5) provides:

(5) Purchase-money debt reduction for solvent debtor treated as price reduction. —If—

(A) the debt of a purchaser of property to the seller of such property which arose out of the purchase of such property is reduced,

(B) such reduction does not occur—

(i) in a title 11 case, or

(ii) when the purchaser is insolvent, and

(C) but for this paragraph, such reduction would be treated as income to the purchaser from the discharge of indebtedness,

then such reduction shall be treated as a purchase price adjustment.

This provision was added to the Internal Revenue Code by the Bankruptcy Tax Act of 1980, Pub.L. No. 96–589, § 2, 94 Stat. 3389, 3393. It only applies if the debt of a purchaser of property to the *seller* of such property is reduced. *See* S.Rep. No. 1035, 96th Cong., 2d Sess. 16, *reprinted in* 1980 U.S.Code Cong. & Admin.News 7017, 7031; *Juister v. Commissioner*, 1987 Tax Ct. Mem.Dec. (P–H) ¶ 87,292. The plaintiffs here are clearly not indebted to the seller of their residence; Park View did not sell the Sutphins their residence. Consequently, section 108(e)(5) is unavailable to plaintiffs.

Nevertheless, plaintiffs argue that the $8240.17 discount serves to reduce the basis of their property and, consequently, should be recognized as income only upon disposition of the property. They rely upon *Commissioner v. Sherman*, 135 F.2d 68 (6th Cir.1943), and *Hirsch v. Commissioner*, 115 F.2d 656 (7th Cir.1940), for this proposition.

In *Hirsch*, the taxpayer purchased real estate in 1928 for $29,000. He paid $10,000 in cash and assumed a $19,000 mortgage. The Depression caused the purchased property to depreciate in value to $8000 in 1936, when the unpaid principal owed to the mortgagee was $15,000. The taxpayer paid $8000 to the mortgagee, which was accepted in complete satisfaction of the outstanding mortgage debt. The court held that the discount received by the taxpayer was not income and construed the transaction to be a reduction of the purchase price paid (from $29,000 to $22,000)

because the taxpayer received nothing of exchangeable value on the "forgiveness" of the indebtedness. 115 F.2d at 658. The taxpayer "received a credit upon the cost of a capital investment; he merely entered into a transaction whereby he procured [a] decrease in his capital loss." *Id.* The taxpayer was permitted to reduce the basis of his property so that the discount would be recognized on the ultimate disposition of the property.

The court reached a similar result in *Sherman,* where the taxpayers satisfied their purchase money mortgage debt for less than its face value. The taxpayers purchased property for $200,000 by paying $25,000 in cash and assuming a $175,000 mortgage. *Sherman,* 135 F.2d at 68. The actual value of the property was considerably less than the purchase price (due to a fraudulent representation made to the taxpayers as to the income productivity of the property). The fair market value of the property was, at most, $73,360. An agreement was therefore reached whereby the taxpayers satisfied the $175,000 mortgage (unpaid principal balance was $174,438.47) with a cash payment of $64,465.92 and an assignment to the creditor of certificates of claim with a face value of $109,972.55. The fair market value of the certificates was $60,484.90. The court held that the taxpayer realized no gain from the prepayment because the true nature of the transaction was actually a reduction in the purchase price of the property due to the misrepresentation. This reduction equalled the difference between the face value of the certificates of claim and their fair market value.

The significant fact common to both *Sherman* and *Hirsch* was that, for various reasons, the value of the property was below the unpaid principal amount of the mortgage. Consequently, the taxpayers received nothing of exchangeable value upon prepayment of the debt, "but only a credit upon the cost of a capital investment, and merely entered into a transaction whereby [they] procured a decrease in [their] capital loss." *Sherman,* 135 F.2d at 70 (citing *Hirsch,* 115 F.2d at 658). There is no allegation in the case at bar that the

market value of plaintiff's residence fell below the unpaid mortgage balance. *See supra* notes 3–4 and accompanying text. *Hirsch* and *Sherman* are therefore inapposite. *See Denman Tire & Rubber Co. v. Commissioner,* 14 T.C. 706, 714–15 (1950), aff'd, 192 F.2d 261 (6th Cir.1951); *Gwinn v. Commissioner,* 3 T.C.M. (CCH) 548, 551 (1944). As stated by the Board of Tax Appeals in *L.D. Coddon & Bros. Inc. v. Commissioner,* 37 B.T.A. 393, 398 (1938):

> [W]here a solvent debtor is under direct obligation to make payments for physical property purchased by him ..., which is still held by him, and satisfies this obligation by paying less than the amounts called for by the obligation, *the property continuing to be of a value sufficient to pay the indebtedness,* the transaction will result in taxable income to the debtor in the amount by which the face value of the obligation exceeds the amount paid by him for its satisfaction.

(emphasis added).

Finally, plaintiffs' argument that no debt reduction occurs where the "full current value" of a note is paid in satisfaction of the debt is without merit. Such an argument would be correct if the terms "full current value" and "remaining principal amount" had identical meanings. Due, at least in part, to increased interest rates, the current value (fair market value) of plaintiffs' 8.5 percent mortgage debt decreased. The fact that plaintiffs benefitted from rising interest rates and were able to repay the debt at an amount below face value—i.e., at the fair market value—does not lead to the conclusion that no debt reduction occurred. *Kirby Lumber* and its progeny were quite specific in holding that a taxpayer recognizes income when it purchases its debts for less than their face value. In the absence of any statutory or judicial exception to Code section 61(a)(12), the court is bound to so hold.

■ The most recent decisions of the Tax Court on this subject support the court's conclusions. In *Michaels v. Commissioner,* 87 T.C. 1412 (1986), the court held that the taxpayer recognized taxable

discharge of indebtedness income when he prepaid the mortgage on his personal residence. The prepayment was initiated because the taxpayer was selling his home and purchasing a new one. The taxpayer asserted that the discount received should be treated as a reduction of the purchase price and should thus be recognized on the ultimate disposition of the property.[5] The Tax Court rejected this argument and required the taxpayer to recognize the gain for the discharge of indebtedness by bifurcating the transaction.[6]

 The most recent case to address whether the discount received on the prepayment of a mortgage is discharge of indebtedness income is *Juister v. Commissioner,* 1987 Tax Ct.Mem.Dec. (P–H) ¶ 87,292. As stated earlier in this opinion, *Juister* involved facts virtually identical to the case at bar. The taxpayers were a married couple filing jointly. They paid $29,399.29 in full satisfaction of their mortgage, which had a remaining principal balance of $35,398.47. The Commissioner determined that the taxpayers understated their gross income by $5999.00, the amount of the discount, and assessed this amount as income from the discharge of indebtedness. The court elaborated on the exceptions to the general rule regarding discharge of indebtedness income, concluding that Code sections 102 and 108 were inapplicable. Because none of the exceptions applied, the court held that the taxpayers must recognize income from the discharge of indebtedness on the prepayment of their mortgage.

## CONCLUSION

For the reasons expressed above, the court concludes that the $8240.17 discount received by plaintiffs on the prepayment of their mortgage-secured debt constituted discharge of indebtedness income and was properly taxed by the Commissioner. Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied. The Clerk is directed to dismiss the complaint. Costs to defendant.

It is so ORDERED.

---

5. The taxpayer deferred recognition of gain on the sale of the property under Code section 1034, which allows such deferral provided that a new residence is purchased within two years.

6. Treas.Reg. § 1.1001–2(a)(2) (1980) requires that the prepayment of the mortgage be viewed separately from the sale. It is a well-settled principle that the payment of an obligation is not a "sale or exchange" for tax purposes. *Fairbanks v. United States,* 306 U.S. 436, 437, 59 S.Ct. 607, 608, 83 L.Ed. 855 (1939); *Osenbach v. Commissioner,* 198 F.2d 235, 236–37 (4th Cir. 1952), *aff'g* 17 T.C. 797 (1951). This procedure is utilized to separate capital gain from discharge of indebtedness income.