Taxes; investment tax credit; Merchant Marine Act of 1936; effect of capital reserve fund withdrawals on amount of available investment tax credit; investment tax credit recapture. — On June 6,1980 the court entered the following order:
Before Davis, Judge, Presiding, Kashiwa and Bennett, Judges.
This income tax refund case comes before the court on the parties’ cross-motions for summary judgment. The two issues presented are (1) whether plaintiff[1] is entitled to recover on its refund claim and (2) whether defendant is entitled to prevail on the counterclaim it asserts. While there is no genuine issue as to any material fact with respect to the refund claim, there is a genuine issue as to material facts with respect to the counterclaim. Without the need for oral argument, we grant plaintiffs motion for summary judgment on its refund claim and refer the counterclaim for trial. We discuss the refund claim first.
Plaintiff owns and operates merchant cargo vessels in United States foreign commerce. During the years 1962 through 1966, plaintiff maintained, with respect to the vessels, a capital reserve fund established pursuant to the provisions of section 607 of the Merchant Marine Act of 1936, 46 U.S.C. § 1177 (1964). The tax treatment of amounts required to be deposited regularly into the fund was *673 governed by closing agreements entered into by plaintiff and the Commissioner of Internal Revenue in 1947 and 1965. These agreements, which were in effect during the period 1962 through 1966, were identical to those at issue in Pacific Far East Line, Inc. v. United States, 211 Ct. Cl. 71, 544 F. 2d 478 (1976). To the extend here relevant, the agreements provided that:
"Tax-deferred” or "Tax-deferment” referring to ordi-náry income and capital gains deposited in Reserve Funds means that such items are not to be recognized as taxable income * * *, and likewise are not to be recognized in the determination of cost basis or invested capital.
* * * All earnings including capital gains * * * which are deposited in the taxpayer’s Reserve Funds, shall be Tax-deferred income * * *.
During the period covered by these closing agreements, plaintiff made expenditures for the acquisition of new vessels and for improvements to preexisting vessels. A portion of these expenditures was paid for directly out of plaintiffs own funds (hereinafter the "down payment”), with the balance coming from borrowed funds secured by mortgages on the vessels. Plaintiff subsequently made payments in satisfaction of the principal amounts of the loans. A portion of both the down payment and principal repayments was made with funds withdrawn from the capital reserve fund.
In determining the amount of the I.R.C. § 38 Investment Tax Credit (ITC) attributable to the acquisition of the new vessels and the improvements made to the preexisting vessels, plaintiff assumed that (1) its tax basis for ITC purposes equaled the full amount of its expenditures unreduced by the portion of the down payment coming out of the capital reserve fund, (2) the repayment of the principal amount of the indebtedness with money coming out of this fund did not result in ITC recapture, and (3) the new vessels and improvements were in their entirety "property with respect to which depreciation * * * is allowable” within the meaning of I.R.C. § 48(a)(1). On audit *674 the IRS, relying on the language of plaintiffs closing agreements, held to the contrary on all these points, reducing plaintiffs ITC. Plaintiff paid the resulting tax deficiency and now sues for a refund.
The issues with regard to plaintiffs treatment of its ITC are identical to those in Pacific Far East Line. In addition, defendant concedes this case is factually indistinguishable from, and therefore controlled by, that decision. Defendant, however, insists Pacific Far East Line was incorrectly decided and invites us to overrule it. We must decline the invitation. Pacific Far East Line was decided by this court sitting en banc. Under the rules of this court, which rules defendant is aware of, this panel cannot overrule a case which was decided en banc. If defendant truly meant to challenge Pacific Far East Line, it should have requested en banc consideration of the present case, something it has failed to do.
Relying upon Pacific Far East Line,[2] we hold that notwithstanding the literal language of plaintiffs closing agreements (1) for ITC purposes, plaintiffs tax basis in the new vessels and improvements equals the full amount of its expenditures unreduced by amounts coming out of the capital reserve fund, (2) repayment of the principal amount of the mortgages with money coming out of such fund did *675 not result in ITC recapture, and (3) the new vessels and improvements are in their entirety "property with respect to which depreciation * * * is allowable.” We therefore hold that defendant improperly reduced plaintiffs ITC, entitling plaintiff to a refund of the deficiency paid.
We now turn to consideration of defendant’s counterclaim. From the pleadings before us, we are unable to determine the statutory and factual foundation of defendant’s counterclaim, much less reach its merits. There is simply too much dispute as to the material facts necessary to ascertain whether and to what extent defendant is entitled to prevail. The counterclaim therefore cannot be resolved on summary judgment and must instead be referred to a trial judge.
it is therefore ordered that plaintiff is entitled to prevail under its refund claim with the amount of its recovery to be determined under subsequent proceedings pursuant to Rule 131(c), and defendant’s counterclaim is referred for trial under Rule 54(a).

 Moore McCormack Resources, Inc., and its consolidated subsidiaries are the plaintiffs in this action. However, solely for convenience, they are collectively referred to as "plaintiff.”

 We note that two recent decisions of this court, Oglebay Norton Co. v. United States, 221 Ct.Cl. 749, 610 F. 2d 715 (1979), and O.L. Schmidt Barge Lines, Inc. v. United States, 221 Ct. Cl. 793, 610 F. 2d 728 (1979), also involved the impact on the availability and amount of the ITC of the use of tax-deferred funds to finance improvements to vessels. However, these two cases are not at all applicable to the present controversy. Oglebay and O. L. Schmidt are limited to the effect on the ITC of the basis reductions mandated by section 607(g) of the Merchant Marine Act of 1936 (MMA), as amended in 1970, 46 U.S.C. § 1177(g) (1976). These cases held that notwithstanding the literal language of this statutory provision, the basis reduction therein required is not to be considered in determining the ITC. The present case does not involve a basis reduction mandated by statute. Rather, we are here dealing with the MMA as in effect prior to the 1970 amendments. During this earlier period, the basis reduction was required under the terms of a closing agreement, not a statute. As to the impact of such a closing agreement mandated reduction on the amount and availability of the ITC, Pacific Far East Line is the controlling precedent.
That Pacific Far East Line is controlling in the context of closing agreement required basis reductions, and that its precedential value is also so limited, is evident from the case itself. The whole thrust and tenor of the opinion was a determination of whether a basis reduction required under a closing agreement entered into prior to initial enactment of the ITC was to be taken into account in determining the amount of the ITC. Our holding that this basis reduction was not to be considered rested upon a "savings clause” contained in the agreement as well as our belief that Congress, by enacting the ITC without any mention of the prior closing agreement, must have intended to statutorily render the closing agreement ineffective for ITC purposes.