**PANHANDLE EASTERN PIPE LINE COMPANY and Affiliates**

v.

**The UNITED STATES.**

**No. 342–79T.**

United States Court of Claims.

June 17, 1981.

---

Marvin K. Collie, Houston, Tex., atty. of record, for plaintiff. Donald F. Wood, Clive Bode, Henry A. Bettendorf, Vinson & Elkins, A. H. John LaForce, II, Houston, Tex., Joan R. Ruff, of counsel.

James L. Malone, III, Washington, D. C., with whom was Acting Asst. Atty. Gen. John F. Murray, for defendant. Theodore D. Peyser, Robert S. Watkins, Washington, D. C., of counsel.

Before SKELTON, Senior Judge, and KASHIWA and BENNETT, Judges.

BENNETT, Judge:

This tax refund suit is before the court on the parties' cross-motions for partial summary judgment. The present motions deal with only one of the three major claims in the petition, and involve a refund claim for the single calendar year ending December 31, 1970. Plaintiff claims that the defendant has erroneously assessed additional taxes under I.R.C. § 47(a) [1] which provides for the recapture of investment tax credit. We agree that defendant erred and grant plaintiff's motion.

Plaintiff, Panhandle Eastern Pipe Line Company, a Delaware corporation, and its consolidated subsidiaries,[2] including Trunkline Gas Company, filed consolidated federal income tax returns for the calendar years in issue in this case, 1969, 1970, and 1971. Plaintiff is a natural gas company engaged in the business of producing, purchasing, transporting, and selling natural gas to utility companies for resale and exploring for and producing hydrocarbons. Plaintiff's business was capital intensive and involved large investments in assets for which investment credits were claimed. The section 38 properties involved in this case are contained in plaintiff's asset accounts 367 and 368, which include pipe, pipe valves, compressor buildings, engines, and cooling towers. Because of the limitation in I.R.C. § 46(a)(2) on the amount of the credit which can be claimed in a single taxable year, plaintiff developed a carryover of unused credit under I.R.C. § 46(b) which was carried forward into the 1970 taxable year.

The present dispute arises as a result of the repurchase by plaintiff of numerous bonds and debentures. Because substantial amounts of cash were needed to purchase the capital assets required for plaintiff's business, prior to and during the years in issue, Panhandle regularly sold debentures and Trunkline regularly sold first mortgage pipeline bonds. Apparently because of favorable market conditions, which resulted from rising interest rates, plaintiff had an opportunity to acquire its outstanding bonds in the open market for less than their original purchase price, thereby retiring the bonds prior to their maturity date at an economic gain. Therefore, prior to and during the period in issue, plaintiff acquired some of its bonds. During 1969, plaintiff acquired corporate bonds having a total par

---

1. All I.R.C. references herein are to the Internal Revenue Code of 1954 as it was in effect in 1969–71.

2. Plaintiff's consolidated subsidiaries or affiliates were: Trunkline Gas Company, Century Refining Company, Anadarko Production Company, Anadarko Oil and Gas Company, Panhandle Western Gas Company, Turkiye Anadarko Petroleum Company, Pan Eastern Exploration Company and Paragon Data Systems, Inc.

value of $13,476,000, and realized discharge of indebtedness income in the total amount of $1,611,225. Under the rule of *United States v. Kirby Lumber Co.*, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931), the resulting economic gain to plaintiff is income. *See* I.R.C. § 61(a)(12). However, I.R.C. § 108 allows a taxpayer who discharges business indebtedness to elect to defer recognition of the gain by consenting to an adjustment to basis under I.R.C. § 1017.

Plaintiff elected to defer recognition of the gain by excluding the amount of the gain from gross income pursuant to section 108 and consenting to the reduction of the basis (pursuant to section 1017) of property held by the plaintiff. As a result, according to section 108 "[n]o amount shall be included in gross income by reason of the discharge * * * of * * * indebtedness." I.R.C. § 108(a). This section clearly indicates that such a transaction should not affect current tax liability, but rather that the recognition of this gain should be deferred until the property with the reduced basis is subsequently disposed of in a taxable transaction. The reduced basis also results in a decrease in the amount of depreciation deductions in subsequent years.

Section 47 is designed to prevent certain abuses of the investment tax credit by providing for a recapture when a taxpayer who takes the credit does not continue to hold the property as section 38 property until the end of the useful life which was used to claim the credit. Section 47 requires that—

> * * * [i]f during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38,
> * * *

then the taxpayer's current tax is increased to recapture the previous tax benefit. The amount of the recapture is equal to the amount by which the investment credit for prior years would be reduced if those credits had been calculated on the basis of the actual useful life ending with the year in which the property ceased to be section 38 property. Thus, section 47 is designed to preclude a taxpayer from receiving the tax benefit of the investment credit and then failing to use the section 38 property in the taxpayer's trade or business for the entire useful life upon which the credit was calculated.

Pursuant to section 47 and the authority granted in I.R.C. § 38(b), the Secretary of Treasury has promulgated Treas.Reg. § 1.47–2(c) [3] which provides for recapture when there has been a reduction in basis of section 38 property:

> If, in the credit year or in any taxable year subsequent to the credit year, the basis (or cost) [4] of section 38 property is reduced, for example, as a result of a refund of part of the cost of the property, then such section 38 property shall be treated as having ceased to be section 38 property with respect to the taxpayer to the extent of the amount of such reduction in basis (or cost) on the date the refund which results in such reduction in basis (or cost) is received or accrued, except that for purposes of § 1.47–1(a) the actual useful life of the property treated as having ceased to be section 38 property shall be considered to be less than 4 years.

Thus, when the taxpayer receives a refund of part of the cost of section 38 property, that portion of the property is treated as having ceased to be section 38 property with respect to the taxpayer. The final portion of the quoted regulation section requires that the useful life of the portion of the property which has ceased to be section 38 property is deemed to be less than 4 years. The effect of this latter provision is to have the refund relate back to the date

---

3. All reference to Treasury Regulations are to the regulations in effect in 1969–71.

4. The parties have disputed the meaning and significance of the language "basis (or cost)." It appears that the language simply indicates that *basis* is the starting point for calculating the qualified investment in *new* section 38 property, and *cost* is the starting point for calculating the qualified investment in *used* section 38 property. *See* I.R.C. § 46(c)(1); Treas.Reg. § 1.46–3(a)(1).

the section 38 property was acquired and therefore disqualify that portion of the basis (or cost) from treatment as a qualified investment under I.R.C. § 47(c).[5]

The defendant takes the position that the recapture provisions apply when the basis of section 38 property is decreased as a result of an adjustment to basis under I.R.C. § 1017 to defer recognition of gain as provided for in I.R.C. § 108. Defendant relies on Treas.Reg. § 1.47–2 and two revenue rulings: Rev.Rul. 72–248, 72–1 C.B. 16; Rev.Rul. 74–184, 74–1 C.B. 8.

Plaintiff contends that a section 1017 basis adjustment is not a recapture event and therefore Treas.Reg. § 1.47–2(c) is not applicable. Alternatively, plaintiff argues that if Treas.Reg. § 1.47–2(c) applies, then the regulation is invalid. We agree with the plaintiff that a section 1017 basis adjustment does not result in recapture. Either Treas.Reg. § 1.47–2(c) does not apply to a section 1017 adjustment, or if it must be read as applying, it is invalid to the extent that it requires recapture in this case.

■ The legislative history of the Revenue Act of 1962, Pub.L.No.87–834, 76 Stat. 962 (1962), shows that the purpose of enacting the investment credit was to stimulate domestic investment by reducing the net cost of acquiring depreciable assets and increasing the flow of cash available for investment. 1962 U.S.Code Cong. & Ad.News 3304, 3313–14. "To guard against a quick turnover of assets by those seeking multiple credit—the bill * * *" provided for recapture of credits if property was disposed of or ceased to be section 38 property. 1962 U.S.Code Cong. & Ad.News 3320. It was intended that the investment credit only be available to taxpayers who actually used the section 38 property in their trade or business, and that the amount of the credit be limited by the amount of credit allowable for the actual useful life, i. e., the actual period during which the taxpayer has funds invested in qualified property.

■ In order for there to be a recapture, there must be a disposition or a cessation. Section 38 property is disposed of when it is sold, or otherwise transferred and no longer owned by the taxpayer. Treas. Reg. § 1.47–2(a)(1). Both parties agree that this case does not involve a disposition. The meaning of cessation is explained as follows:

(2) "Cessation". (i) A determination of whether section 38 property ceases to be section 38 property with respect to the taxpayer must be made for each taxable year subsequent to the credit year. Thus, in each such taxable year the taxpayer must determine, as if such property were placed in service in such taxable year, whether such property would qualify as section 38 property (within the meaning of § 1.48–1) in the hands of the taxpayer for such taxable year.

(ii) Section 38 property does not cease to be section 38 property with respect to the taxpayer in any taxable year subsequent to the credit year merely because under the taxpayer's depreciation practice no deduction for depreciation with respect to such property is allowable to the taxpayer for the taxable year, provided that the property continues to be used in the taxpayer's trade or business (or in the production of income) and otherwise qualifies as section 38 property with respect to the taxpayer. [Treas.Reg. § 1.47–2(a)(2)(i)–(ii).]

---

**5.** This deemed useful life provision in Treas. Reg. § 1.47–2(c)(1) appears to be in conflict with the statute, I.R.C. § 47(a)(1). The statute states that the recapture shall be calculated by substituting the actual useful life, i. e., "the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property." The regulation may therefore be invalid to the extent that its method of computing the recapture is contrary to the statute. *Koshland v. Helvering*, 298 U.S. 441, 447, 56 S.Ct. 767, 770, 80 L.Ed. 1268 (1936) (Secretary of the Treasury has "no power to amend [the statute] by regulation"); *Lykes Bros. S.S. Co. v. United States*, 206 Ct.Cl. 354, 369, 513 F.2d 1342, 1350 (1975) ("a regulation which 'operates to create a rule out of harmony with the statute, is a mere nullity.' *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134, 56 S.Ct. 397, 399, 80 L.Ed. 528 (1936).").

This regulation makes it clear that in order for property to cease to be section 38 property with respect to the taxpayer, there must be some change in the property or a portion of the property so that it no longer qualifies as section 38 property.

Treas.Reg. § 1.47–2(a) refers to Treas. Reg. § 1.48–1 which, along with I.R.C. § 48, defines the qualifications for section 38 property. In this case, the character of the property has not changed, and the useful life has not changed unless it is deemed to have changed because of a reduction in basis. The defendant's position relies on the requirement that depreciation be allowable to the taxpayer on the property. The defendant assumes that if the basis is decreased and depreciation is no longer allowed on the amount by which the basis is decreased, then depreciation is no longer allowable on a portion of the property and therefore that portion of the property is no longer section 38 property. Defendant's reasoning continues that, if it is no longer section 38 property, no investment credit is allowed, and the useful life can be deemed to be less than 4 years (3 years under current law).

■ According to Treas.Reg. § 1.48–1(b)(1), "a deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 and the basis (or cost) of the property is recovered through a method of depreciation * * *." Treas.Reg. § 1.48–1(b)(2) provides:

(2) If, for the taxable year in which property is placed in service, a deduction for depreciation is allowable to the taxpayer only with respect to a part of such property, then only the proportionate part of the property with respect to which such deduction is allowable qualifies as section 38 property for the purpose of determining the amount of credit allowable under section 38. Thus, for example, if property is used 80 percent of the time in a trade or business and is used 20 percent of the time for personal purposes, only 80 percent of the basis (or cost) of such property qualifies as section

38 property. Further, property does not qualify to the extent that a deduction for depreciation thereon is disallowed under section 274 (relating to disallowance of certain entertainment, etc., expenses).

Thus, if only a portion of the property is used in the taxpayer's trade or business and depreciation is only allowed on that part, then only that portion of the property qualifies as section 38 property.

The defendant contends that an adjustment to basis under section 1017 results in depreciation only being allowable on a portion of the property. However, every reduction in basis does not mean that depreciation is not allowable on a portion of the property. Both of the examples in Treas. Reg. § 1.48–1(b)(2) involve situations where depreciation is not allowable on a part of the basis because that portion of the property is not used in the trade or business. Very few reductions in basis are the result of a determination that depreciation should not be allowable on a portion of the property. For example, when a deduction for depreciation is taken, the basis is reduced, but surely depreciation was allowable on the portion of the property represented by that part of the basis.

■ Treas.Reg. § 1.46–3(c)(1) defines basis or cost for purposes of the qualified investment on which an investment credit is allowed:

* * * The basis of any new section 38 property shall be determined in accordance with the general rules for determining the basis of property. Thus, the basis of property would generally be its cost (see section 1012), unreduced by the adjustment to basis provided by section 48(g)(1) with respect to property placed in service before January 1, 1964, and any other adjustment to basis, such as that for depreciation, and would include all items properly included by the taxpayer in the depreciable basis of the property, such as installation and freight costs. However, for purposes of determining qualified investment, the basis of new section 38 property constructed, reconstructed, or erected by the taxpayer shall

not include any depreciation sustained with respect to any other property used in the construction, reconstruction, or erection of such new section 38 property. (See paragraph (b)(4) of § 1.48–1.) Thus, it is clear that basis for purposes of the investment credit is not reduced by any adjustment to basis, such as that for depreciation. Adjustments to basis do not result in depreciation not being allowable on a portion of the property within the meaning of Treas.Reg. § 1.48–1(b)(2).

This conclusion that adjustments to basis do not result in a decrease in the qualified investment and resulting credit is reinforced by the reference to I.R.C. § 1012 in Treas.Reg. § 1.46–3(c)(1). Section 1012 provides that the basis of property shall be the cost of such property. As Treas.Reg. § 1.1012–1(a) states: "The cost is the amount paid for such property in cash or other property." This decision to equate basis for purposes of the investment credit with the section 1012 basis is clearly supportive of the purpose of the credit. In this way the credit is based on the *amount of money* (cost) which the taxpayer has *invested* in section 38 property.

The general statutory provisions relating to basis distinguish between the section 1012 cost basis and the section 1011 adjusted basis. I.R.C. § 1011 provides for an *adjusted basis* for determining gain or loss from the sale or other disposition of property. Treas.Reg. § 1.1011–1 states:

The *adjusted basis* for determining the gain or loss from the sale or other disposition of property *is the cost or other basis prescribed in section 1012* or other applicable provisions of subtitle A of the Code, *adjusted to the extent provided in section 1016, 1017, and 1018* or as otherwise specifically provided for under applicable provisions of internal revenue laws. [Emphasis added.]

Treas.Reg. § 1.1017–1(a) recognizes that a section 1017 adjustment to basis is like a section 1016 adjustment which is meant to affect gain or loss on disposition, *and not a* reduction in cost basis under section 1012. That regulation, captioned "Adjusted basis; discharge of indebtedness; general rule," states that:

In addition to the adjustments provided in section 1016 and the regulations thereunder which are required to be made with respect to the cost or other basis of property, * * * a further adjustment shall be made in any case in which there shall have been an exclusion from gross income under section 108(a) on account of a discharge of indebtedness during the taxable year. * * *

Treating a section 1017 adjustment to basis as only affecting the section 1011 adjusted basis for purposes of determining gain or loss from the sale or other disposition of property, is consistent with the purpose of section 108: to allow the taxpayer to defer recognition of the gain. A section 1017 adjustment results in a lower basis, thereby decreasing the amount of deductions for depreciation and increased recognition of gain at the time of sale or other disposition.

■ By holding that a section 1017 adjustment does not result in a recapture under section 47, the court allows all taxpayers who elect to defer recognition of gain under section 108 to be treated equally. There is no reason to penalize a taxpayer, who has invested in section 38 property, by recapturing investment credit when the taxpayer defers recognition of gain under section 108 thereby reducing the adjusted basis of section 38 property under section 1017. Such a section 1017 adjustment to basis does not affect the amount of money which the taxpayer has invested in section 38 property, and therefore it should not affect the taxpayer's previously claimed investment credit.

If a section 1017 adjustment to basis required a recapture, it would logically follow that a section 1016 adjustment for depreciation would require recapture. Besides being contrary to the express provision of Treas.Reg. § 1.46–3(c)(1), such a position with regard to basis for purposes of qualified investment would result in the recapture of almost all, if not all, investment credits since property must be depreciable to qualify for the credit.

In order to determine whether a section 1017 adjustment to basis results in a recapture, it is necessary to carefully consider the meaning of section 47. I.R.C. § 47(a)(1) authorizes a recapture:

> . * * * [i]f during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38 * * *

As already indicated, an adjustment to basis under section 1017 does not cause section 38 property to cease to be section 38 property with respect to the taxpayer. However, Treas.Reg. § 1.47–2(c) seems to expand upon the meaning of "ceases to be section 38 property" to include situations where the basis of the property is reduced. If that regulation is limited to situations where there is a refund of the purchase price, or the taxpayer's investment is decreased in some other manner and the decrease is reflected in a reduction to basis, then the regulation may be valid to the extent that it requires recapture.[6] A decrease in the amount of money which the taxpayer has invested in section 38 property (either through a refund in purchase price, or using the property for personal or entertainment purposes) or in the useful life of the property is the type of cessation that recapture was meant to cover. In each case, the qualified investment (the amount of money which taxpayer has invested in section 38 property) is decreased, either directly by refund or indirectly by decrease in the percentage of the property which meets the requirements for a qualified investment. Even if the "for example" clause at the beginning of Treas.Reg. § 1.47–2(c)(1) is eliminated, the regulation still states that the property ceases to be section 38 property "on the date the *refund* which results in the reduction in basis (or cost) is received or accrued." [Emphasis added.] When an adjustment to basis under section 1017 occurs, no refund results, no money is received or accrued, and, most importantly, the taxpayer's investment in section 38 property is not affected.

A section 1017 adjustment is a separate transaction. The purpose of the adjustment and of section 108 can be achieved without having any effect on the taxpayer's investment credit.

The recent cases of this court in the investment credit area, support our interpretation of the statutory scheme in this case, particularly *Lykes Bros. S.S. Co. v. United States*, 206 Ct.Cl. 354, 513 F.2d 1342 (1975); *Pacific Far East Line, Inc. v. United States*, 211 Ct.Cl. 71, 544 F.2d 478 (1976), and *Oglebay Norton Co. v. United States*, 221 Ct.Cl. ——, 610 F.2d 715 (1979). In *Lykes Bros.*, the court found that the taxpayer's investment qualified for the credit under the transition rules. In so holding, the court relied heavily on the fact that "remedial legislation should be construed liberally in order to effectuate its purpose" and "interpreted liberally in keeping with its purposes." 206 Ct.Cl. at 375, 513 F.2d at 1353 (citations omitted).

In *Pacific Far East*, the court followed its policy of construing the investment credit liberally. In that case the principal issue was whether tax deferred funds in a reserve fund for construction of subsidized vessels qualified as part of the cost basis for investment credit purposes. The court held that the qualified investment is a percentage of basis and that basis is the cost of the property. Finding that the fact that the funds spent had their source in untaxed income was irrelevant, the court concluded that "[t]he cost of property to the taxpayer is the amount of money that he paid to acquire the property, whatever the source of the money." 211 Ct.Cl. at 84, 544 F.2d at 485. The court continued:

> In view of the vast array of credits, exemptions, deferrals, deductions, and different rates of tax on income laid down by Congress in intricate detail in the Internal Revenue Code, it is unthinkable that the amount of the conceptually simple investment credit was intended— without a word of textual support—to be

---

6. However, as indicated in note 5, *supra*, the regulation may be invalid in other respects.

affected by the extent of taxation or the deferral of taxation on income that had produced funds used to make the investment that creates the credit. * * * [211 Ct.Cl. at 84–85, 544 F.2d at 485.]

In *Pacific Far East*, the court considered the general purposes of the credit in the context of the specific facts of the case, 211 Ct.Cl. at 82, 544 F.2d at 484, and concluded that the use of tax deferred funds to purchase the ship did not reduce the basis for investment credit purposes. If actual use of tax deferred funds at the time of purchase does not reduce the cost basis for investment credit purposes, we conclude that a subsequent adjustment to basis to defer tax also does not reduce the cost basis for investment credit purposes. Also, as already noted, recapture must be based on a determination that the section 1017 adjustment would have reduced the credit if it had occurred in the year the investment was made.

In *Pacific Far East*, the court also construed Treas.Reg. § 1.48–1(b)(2), which explains the meaning of the requirement that depreciation be allowable and the effect of only part of the property qualifying for depreciation. 211 Ct.Cl. at 86–87, 544 F.2d at 486–87. The court found that the regulation was limited to the situation where property was used for personal and entertainment purposes and had "absolutely no application" where the property was used 100 percent in the taxpayer's trade or business. 211 Ct.Cl. at 87, 544 F.2d at 487. That interpretation supports our reasoning in this case, and is clearly consistent with the holding in this case.

The *Pacific Far East* opinion also contains other reasoning that supports the holding in this case. The court found that—

> * * * the fact that a portion of the cost of the ships is not depreciable because that cost has already been recovered through prior tax deferrals does not remove that portion from the investment tax credit provisions. * * * [211 Ct.Cl. at 88, 544 F.2d at 487.]

The court reasoned that tax deferrals were a special depreciation arrangement that gave the taxpayer the "equivalent of accelerated depreciation" for recovering part of the cost of the property. 211 Ct.Cl. at 88–89, 544 F.2d at 487–88. The adjustments to basis—

> * * * insure that depreciation deductions shall not be taken on elements of cost recovered through other means, * *. Adjustments made to ensure that elements of cost are deducted only once are irrelevant to the purpose of the investment credit, *viz.*, to reduce the initial cost. * * * [211 Ct.Cl. at 89, 544 F.2d at 488.]

That reasoning is equally compelling in this case. Adjustments to basis to insure that costs are only recovered once for tax purposes should not be held to affect the investment credit in this case unless such an interpretation is clearly mandated by the recapture provisions. *Pacific Far East* indicates that such a recapture based on a subsequent adjustment to basis for tax deferment would be contrary to the purpose of the investment tax credit provisions. Treating the adjustment as a special depreciation arrangement brings it within the express language of Treas.Reg. § 1.46–3(c)(1).

The decision in *Oglebay Norton* adopted the reasoning of *Pacific Far East*. Although *Pacific Far East* involved a closing agreement which required that the basis be reduced by the amount of the expenditures from the reserve fund, in *Oglebay Norton* the tax treatment of the reserve fund and required reduction to basis had been mandated by statute. *See* 46 U.S.C. § 1177(g) (1976). In *Oglebay Norton*, the plaintiff had financed improvements to three subsidized ships entirely with tax-deferred funds. The court held that the required reduction in basis did not mean that depreciation was not allowable, "it merely affects the amount of the deduction that Congress will permit taxpayer to take for depreciation of 'property with respect to which depreciation is allowable.' " 221 Ct.Cl. at ——, 610 F.2d at 724. The most relevant portion of that opinion is contained in the following paragraph:

The bases of the *Purnell, Ashland*, and *Fitzgerald* were increased by the extent of approximately $1.6 million that plaintiff used to reconstruct these vessels. The adjusted basis of these vessels would have correspondingly increased had not Congress mandated that tax-deferred funds, in the case of withdrawals from the ordinary income account, would reduce the basis of section 38 investment property by a like amount. Consequently, by giving tax-deferred status to these funds, Congress has already decided that since these funds were not taxed, a further deduction for depreciation would not serve the purpose intended by the tax-deferred fund mechanism; namely, the generation of investment capital. Therefore, plaintiff was prevented from taking a depreciation deduction since the funds used were treated specially. If taxpayer had used solely its own money, there would be no question that it would be entitled to a depreciation deduction. Simply because a depreciation deduction was not allowable in this instance does not mean that the improvements were not depreciable property within the meaning of section 38. [221 Ct.Cl. at ——, 610 F.2d at 725 (footnotes omitted).]

Thus, the court in that case recognized the distinction between *adjusted basis* for purposes of depreciation and recognition of gain or loss upon disposition, and the *cost basis* used to calculate the investment credit. The court also recognized that depreciation can be allowable on the whole property even where there is a reduced basis. Although the improvements in *Oglebay Norton* did not increase the adjusted basis, the court found that plaintiff did pay for its improvements and therefore had a cost basis. 221 Ct.Cl. at ——, 610 F.2d at 726. In holding that the plaintiff in *Oglebay Norton* was entitled to the investment credit, the court was following the congressional intent as it had in *Pacific Far East*.

### CONCLUSION

We conclude that the investment credit is allowable on the plaintiff's cost basis unadjusted by the section 1017 adjustment to defer tax pursuant to the section 108 election. Therefore, plaintiff's entitlement to the full credit on its investment is not affected by the section 1017 adjustment, and no recapture is required under section 47. Plaintiff's property has not ceased to be section 38 property. We read Treas.Reg. § 1.47–2(c) as being limited to situations where plaintiff's investment in section 38 property has been reduced as, for example, in the case of a refund of the purchase price. If the regulation required recapture in this case, the regulation would be invalid as contrary to the statute (I.R.C. § 47) and to congressional intent.

Therefore, the defendant erred in assessing additional taxes on the basis of the recapture under section 47. Plaintiff is entitled to a refund of the $20,111 in additional taxes which have resulted from the recapture, since its investment tax credit carry forward should not have been reduced by recapture of investment tax credit. Since we have held that the recapture was in error, defendant's motion of September 25, 1980, for leave to file its first amended answer, which deals only with the method of calculating the recapture and the amount thereof, will be denied as moot.

Defendant's motion for partial summary judgment is denied, and defendant's motion for leave to file its first amended answer is denied. Plaintiff's cross-motion for partial summary judgment is granted, and plaintiff is entitled to partial judgment in the amount of twenty thousand, one hundred eleven dollars ($20,111), with interest as provided by law, for the taxable year ending December 31, 1970. This case is remanded to the trial division for further proceedings on the remaining counts of the petition.

KASHIWA, Judge, concurring in result:

I concur in the majority's result but wish to state the reasoning I perceive necessary to that result.

The critical inquiry is whether a portion of this concededly § 38 property ceased to be § 38 property solely by reason of the

§ 1017 election plaintiff made in a subsequent taxable year. Defendant, it seems to me, has two basic arguments, neither of which are persuasive. One argument is that the later § 1017 adjustment is deemed under Treas.Reg. § 1.48–1(b)(2) to alter the use of that portion of the property in the year the asset was placed in service. While Treas.Reg. § 1.47–2(a)(2) does provide some support for the "look back," I am not persuaded that this particular adjustment to basis necessarily alters the *use* of the property within the meaning of Treas.Reg. § 1.48–1(b)(2). While property not held for investment or business is not depreciable under § 167, it does not follow that when property is no longer depreciable the property is no longer used in the trade or business. The regulations concede as much. *See* Treas.Reg. § 1.47–2(a)(2)(iii) (Example 2). A second and related argument is that under Treas.Reg. § 1.47–2(c), a subsequent reduction in basis is otherwise a "cessation" as to that portion of the property. This issue is closer, but I conclude that regulation is inapplicable. First, the Government's reading requires that all adjustments to basis trigger recapture. As that includes annual depreciation deductions, this reading seems at odds with the clear congressional intent that investment in depreciable property be encouraged. Second, the regulation is apparently directed at situations where the overall investment in an asset is reduced, as where a refund occurs. From the perspective of the asset's seller, no reduction in overall investment occurs in a debt repurchase situation for the portion of the investment no longer borne by the purchasing debtor is borne (in the form of a loss) by the original bondholders. Unlike the refund situation, the asset's seller has identical funds for further investment before and after the transaction. Admittedly, the debtor's share of the investment is reduced, but § 108 provides explicit nonrecognition for that. Had Congress intended otherwise, it would have said so. *Cf. Pacific Far East Line, Inc. v. United States*, 211 Ct.Cl. 71, 84–86, 544 F.2d 478, 485–486 (1976) (in the absence of contrary expression, other Code provisions apply and define investment credit provisions). Third, as *Pacific Far East* and related decisions indicate, we have consistently taken a liberal view of the investment credit. Of course, care must be taken when expanding certain of these cases, such as *Oglebay Norton Co. v. United States*, 221 Ct.Cl. ——, 610 F.2d 715 (1979), beyond their facts. *See Moore McCormack Resources, Inc. v. United States*, Ct.Cl. No. 173–79T (order entered June 6, 1980), at 3, n.2. This debt repurchase situation, however, is an appropriate instance in which to apply that liberal view, especially given the ambiguity of Treas.Reg. § 1.47–2(c) and the nonrecognition policy embodied in § 108. Thus, that regulation is inapplicable to these facts. Although the majority apparently holds Treas.Reg. § 1.47–2(c) inapplicable, it proceeds beyond to intimate that the deemed useful life provision of that regulation may be invalid as contrary to the statute. As the regulation is inapplicable, it is unnecessary to pass on it as a substantive provision. An argument can certainly be made that the deemed useful life provision, limited as it appears to be to the refund situation, *compare* Treas.Reg. § 1.47–1(a)(1)(i) (first sentence), reaches a point not covered by the statute and comports with the reality of the investment. Despite the suggestion in the majority's opinion, today's decision does not, and cannot, resolve that issue.