MORRISON, INCORPORATED, et al.,
Petitioners–Appellees,
Cross–Appellants,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent–Appellant,
Cross–Appellee.

No. 88–8665.

United States Court of Appeals,
Eleventh Circuit.

Jan. 9, 1990.

William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, William A. Whitledge, Appellate Staff, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellant, cross-appellee.

Thomas W. Power, Power & Coleman, Tracy J. Power, Washington, D.C., for petitioners-appellees, cross-appellants.

Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge.

In this appeal, we affirm the Tax Court's rulings, including its use of a functional allocation approach in determining whether a taxpayer is entitled to an investment tax credit due to the use of tangible personal property.

## I. FACTS

Morrison, Inc. and nine related corporations (collectively "Morrison") operate cafeteria-style restaurants throughout the South. In 1977 and 1978, Morrison built several new restaurants and claimed investment tax credit under I.R.C. §§ 38 and 48 for expenditures on nineteen categories of equipment. The Commissioner of Internal Revenue ("the Commissioner") issued deficiency notices, asserting that Morrison's expenditures did not qualify for the investment tax credit. Morrison subsequently petitioned the Tax Court to review the Commissioner's determinations. Morrison also filed refund claims for a percentage of expenditures on primary electrical distribution systems.

This appeal concerns six equipment categories.

(1) *Kitchen hand sinks.* During working hours, Morrison employees clean their hands in stainless steel kitchen hand sinks. Employees operate the sinks with their elbows or feet. Local health codes and regulations govern the sinks' locations. When a cafeteria is closed, employees disconnect kitchen hand sinks from water supplies and sanitary sewers.

(2) *Garbage rooms and cooler, freezer, and garbage room floors.* Morrison cools its cafeteria garbage rooms to between fifty and fifty-five degrees fahrenheit to reduce odors and control insects. Although the garbage rooms connect to the main cafeteria buildings, employees can enter the rooms only from outside the buildings. Morrison constructs its cooler, freezer, and garbage room floors with more than twice the insulation it uses in other floors. The insulation helps prevent buckling and cracking caused by cold temperatures and moisture build-up.

(3) *Kitchen sanitary walls and floor tiles.* Quarry floor tiles cover kitchen floors and extend six inches up kitchen walls. Ceramic kitchen sanitary wall tiles extend from six inches above the floor to kitchen ceilings. The wall and floor tiles are permanently attached to buildings by a cement and grout mixture. The floor tiles' texture is slightly rougher than that of the wall tiles. Local health codes require, however, that both surfaces be smooth enough for easy cleaning.

(4) *Service line concrete curbs.* Morrison's concrete service line curbs wrap around the length of each cafeteria serving line. Morrison designs the curbs to protect customers from spills that occur behind serving lines.

(5) *Kitchen panel boards.* Kitchen panel boards distribute electricity to kitchen equipment, but not to lighting, cooling, or heating units. Manufacturers do not, however, design panel boards for specific equipment; buyers may use them to supply electricity to almost any appliance.

(6) *Primary electrical distribution systems.* Morrison's primary electrical distribution systems bring electricity from outside sources to a central distribution point in each cafeteria. Primary electrical systems include wires and conduits from outside power sources, transformers, and a main distribution panel. The parties agree that Morrison's primary electrical distribution systems distribute 55.9–percent of their electricity to cafeteria-related machinery and equipment. Based on this figure, Morrison sought a refund for 55.9–percent of its expenditures on primary electrical systems.

## II. PROCEDURAL HISTORY

On June 6, 1988, the Tax Court entered an order concluding that Morrison's expenditures on eleven of nineteen equipment categories, including kitchen panel boards, qualified for the investment tax credit. The Tax Court also ruled that the government owed Morrison a refund for 55.9–percent of its expenditures on primary electrical systems. In applying this "functional allocation approach" to primary electrical system expenditures, the Tax Court followed its ruling in *Scott Paper Co. v. Commissioner,* 74 T.C. 137 (1980).

The Commissioner appeals the Tax Court's decision concerning kitchen panel boards and primary electrical systems. Morrison appeals the Tax Court's decision relating to four equipment categories: kitchen hand sinks; garbage rooms and cooler, freezer, and garbage room floors; kitchen sanitary walls and floor tiles; and service line concrete curbs.

## III. CONTENTIONS OF THE PARTIES

The Commissioner contends that the Tax Court correctly ruled that Morrison's expenditures on kitchen hand sinks, garbage rooms, floors, sanitary walls, floor tiles, and serving line concrete curbs did not qualify for the investment tax credit. The Commissioner contends that the Tax Court erred by ruling that Morrison's expenditures on kitchen panel boards qualified for the investment tax credit. The Commissioner also contends that the Tax Court erred by applying a functional allocation approach to Morrison's expenditures on primary electrical systems. The Commissioner urges us to adopt a contrary rule similar to that in *A.C. Monk & Co. v. United States,* 686 F.2d 1058 (4th Cir.1982).

Morrison contends that the Tax Court correctly ruled that its expenditures on kitchen panel boards qualified for the investment tax credit. Morrison also contends that the Tax Court properly applied a functional allocation approach to its pri-

mary electrical system expenditures. Morrison urges us to follow the *Scott Paper* rule and a similar rule in *Illinois Cereal Mills, Inc. v. Commissioner*, 789 F.2d 1234 (7th Cir.), *cert. denied*, 479 U.S. 995, 107 S.Ct. 600, 93 L.Ed.2d 600 (1986). Finally, Morrison contends that the Tax Court erred by ruling that its expenditures on hand sinks, garbage rooms, floors, sanitary walls, floor tiles, and serving line concrete curbs did not qualify for the investment tax credit.

## IV. ISSUES

The issues presented on appeal are:

(1) whether the Tax Court erred by ruling that Morrison's expenditures on kitchen hand sinks, garbage rooms, floors, sanitary walls, floor tiles, and serving line concrete curbs did not qualify for the investment tax credit;

(2) whether the Tax Court erred by ruling that Morrison's expenditures on kitchen panel boards qualified for the investment tax credit; and

(3) whether the Tax Court correctly ruled that the government owed Morrison a refund based on 55.9–percent of Morrison's primary electrical system expenditures.

## V. DISCUSSION

### A. The Investment Tax Credit

■ Congress enacted the investment tax credit "to increase economic productivity, output and growth by creating a tax incentive for the purchase of machinery, equipment, and other property used to produce goods or run a business." *Munford, Inc. v. Commissioner*, 849 F.2d 1398, 1400 (11th Cir.1988) (quoting *Illinois Cereal*, 789 F.2d at 1236). *See* H.R.Rep. No. 1447, 87th Cong., 2d Sess. 11, 1962–3 C.B. 405, 411–12; S.Rep. No. 1881, 87th Cong., 2d Sess. 11, *reprinted in* 1962 U.S.Code Cong. & Admin.News 3297, 3304, 3313. To qualify for the investment tax credit, a taxpayer must purchase "section 38 property." Section 48(a) of the Internal Revenue Code defines section 38 property:

(a) Section 38 property.—

(1) In general—Except as provided in this subsection, the term 'section 38 property' means—

(A) tangible personal property (other than an air conditioning or hearing unit), or

(B) other tangible property (not including a building and its structural components) but only if such property—

(i) is used as a integral part of manufacturing, production, or extraction or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services....

Section 48(a), therefore, establishes two categories of section 38 property—"tangible personal property" and "other tangible property" used in conjunction with an enumerated activity. In this case, the Tax Court concluded that Morrison did not engage in a section 48(a)(1)(B)(i) enumerated activity. Instead, the Tax Court found that Morrison engaged in a retail activity. We agree with the Tax Court's conclusion. *See Piggly Wiggly Southern, Inc. v. Commissioner*, 84 T.C. 739, 749 (1985) (taxpayer's meat preparation for retail sale did not qualify as manufacturing or production activity within meaning of section 48(a)(1)(B)(i)), *aff'd*, 803 F.2d 1572 (11th Cir. 1986). Accordingly, we review the disputed equipment categories only to determine whether they constitute tangible personal property under section 48(a)(1)(A). The treasury regulations define tangible personal property as follows:

For purposes of this section, the term 'tangible personal property' means any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures (including items which are structural components of such buildings or structures).... Tangible personal property includes all property (other than structural components) which is contained in or attached to a building....

Treas.Reg. § 1.48–1(c).

■ A structural component of a building, therefore, does not qualify for the investment tax credit. The treasury regu-

lations define "structural components" as follows:

> The term 'structural components' include such parts of a building as walls, partitions, floors, and ceilings, as well as any permanent coverings therefor such as paneling or tiling; windows and doors; all components (whether in, on, or adjacent to the building) of a central air conditioning or heating system, including motors, compressors, pipes and ducts; plumbing and plumbing fixtures such as sinks and bathtubs; electrical wiring and lighting fixtures; chimneys; stairs, escalators, and elevators, including all components thereof; sprinkler systems; fire escapes; and other components relating to the operation or maintenance of a building. However, the term 'structural components' does not include machinery the sole justification for the installation of which is the fact that such machinery is required to meet temperature and humidity requirements which are essential for the operation of other machinery or the processing of materials or foodstuffs....

Treas.Reg. § 1.48–1(e)(2).

In *Whiteco Industries v. Commissioner,* 65 T.C. 664, 672–73 (1975), the Tax Court listed six criteria for determining whether property constitutes tangible personal property within the meaning of section 48(a)(1)(A):

> (1) Is the property capable of being moved, and has it in fact been moved?....
>
> (2) Is the property designed or constructed to remain permanently in place?....
>
> (3) Are there circumstances which tend to show the expected or intended length of affixation, i.e., are there circumstances which show that the property may or will have to be moved?....
>
> (4) How substantial a job is removal of the property and how time-consuming is it? Is it 'readily removable'?....
>
> (5) How much damage will the property sustain upon its removal?....
>
> (6) What is the manner of affixation of the property to the land?....

With these principles we review the Tax Court's findings concerning which equipment categories qualify as tangible personal property utilizing the clearly erroneous standard. *See Munford,* 849 F.2d at 1402 (applying "clearly erroneous" standard of review to issue of whether refrigerated warehouses constitute "buildings" for purposes of investment tax credit). We conduct a plenary review of the Tax Court's decision applying the functional allocation approach and concluding that the government owed Morrison a refund based on a percentage of Morrison's primary electrical system expenditures. *See Kirchman v. Commissioner,* 862 F.2d 1486, 1490 (11th Cir.1989) (appellate courts conduct plenary review of tax court legal conclusions); *Miller v. Commissioner,* 836 F.2d 1274, 1277 (10th Cir.1988) (same).

### B. Kitchen Hand Sinks

The Tax Court concluded that Morrison's expenditures on kitchen hand sinks did not qualify for the investment tax credit because the sinks did not constitute tangible personal property. Morrison argues that kitchen hand sinks do constitute tangible personal property because employees can move the sinks and because manufacturers tailor the sinks to the food service industry.

We conclude that the Tax Court correctly ruled that kitchen hand sinks do not constitute tangible personal property. Morrison cannot move the sinks without great difficulty; the sinks connect to each cafeteria's plumbing system and are bolted to walls. Manufacturers design kitchen hand sinks to remain permanently in place. Accordingly, kitchen hand sinks constitute structural components and do not qualify for the investment tax credit.

### C. Cooler, Freezer and Garbage Room Floors, and Garbage Rooms

Morrison's cooler, freezer, and garbage room floors fall directly within the regulation's definition of structural components. Treas.Reg. § 1.48–1(e)(2) (structural components "include such parts of a building as ... floors"). Morrison's ex-

penditures on floors, therefore, do not qualify for the investment tax credit. As the Tax Court stated:

> Although the floors in issue may differ somewhat from the floors in the remaining portions of the cafeteria due to the fact that they are built on extra insulation, they nevertheless are floors. We consider them to be structural components due to the permanent nature in which they are installed.

*Morrison, Inc. v. Commissioner*, T.C.M. 1986–129, slip op. at 59–60 (March 31, 1986).

Similarly, Morrison's garbage rooms constitute structural components. Garbage rooms are permanent in nature and Morrison can move them only by greatly damaging underlying cafeteria buildings. The Tax Court correctly distinguished *Giannini Packing Corp. v. Commissioner*, 83 T.C. 526 (1984), in which the court permitted a taxpayer to deduct expenses it incurred when constructing fresh fruit cooling rooms. The *Giannini* taxpayer "processed" fresh fruit; the cooling rooms, therefore, constituted an integral part of production. *See* Treas.Reg. § 1.48–1(d)(2) ("section 38 property would include ... property used as an integral part of ... the processing of meat, fish or other foodstuff"). Morrison, however, engages in a retail activity. It does not engage in the production of foodstuff. Morrison's garbage rooms, therefore, cannot be construed as an integral part of food processing. *Morrison, Inc.*, T.C.M. 1986–129, slip op. at 61. *See* Treas.Reg. §§ 1.48–1(d)(2), (4).

### D. Kitchen Sanitary Walls and Floor Tiles

■ Kitchen sanitary walls and floor tiles constitute structural components of Morrison's cafeteria buildings. *See* Treas. Reg. § 1.48–1(e)(2) (structural components include "walls, partitions, floors, ... as well as any permanent coverings therefor such as paneling or tiling"); S.Rep. No. 95–1263, 95th Cong.2d Sess. 117, *reprinted in* 1978 U.S.Code Cong. & Admin.News 6761, 6880 (permanently affixed floor tiles constitute structural components ineligible

for the investment tax credit). Morrison's reliance on *Brown–Forman Distillers Corp. v. United States*, 499 F.2d 1263, 205 Ct.Cl. 402 (1974) is misplaced. In *Brown–Forman*, the court found that a maturation facility for whiskey barrels qualified for the investment tax credit as "other tangible property." As we stated earlier, we review Morrison's equipment categories only to determine whether the equipment qualifies as tangible personal property.

### E. Serving Line Concrete Curbs

■ Morrison admits that it cannot easily move its service line concrete curbs, but argues that the curbs are "clearly accessorial" to its business. The Tax Court, however, correctly applied the *Whiteco Industries* factors and concluded that "it would be impractical and expensive to move [a] curb due to its permanent nature." *Morrison, Inc.*, T.C.M. 1986–129, slip op. at 56. The serving line concrete curbs constitute structural components of Morrison's cafeteria buildings and do not constitute tangible personal property.

### F. Kitchen Panel Boards

■ The Tax Court concluded that Morrison's kitchen panel boards qualified for the investment tax credit as tangible personal property. The Commissioner argues that the kitchen panel boards constitute structural components of Morrison's cafeteria buildings. The Commissioner asserts that subsequent tenants in Morrison's buildings could easily use the kitchen panel boards to power machinery other than kitchen equipment.

We agree with the Tax Court, however, that Morrison's kitchen panel boards differ from general equipment panel boards that provide electricity to other parts of the cafeteria. *See Central Citrus Co. v. Commissioner*, 58 T.C. 365, 374 (1972). Morrison uses its kitchen panel boards strictly to accommodate heavy duty kitchen equipment. Kitchen panel boards, therefore, are not structural components of the cafeteria buildings, but are accessorial to Morrison's business. *See* S.Rep. No. 1881, 87th Cong., 2d Sess., *reprinted in* 1962 U.S.Code Cong.

& Admin.News 3297, 3318 ("It is intended that assets accessory to a business ... are to qualify for the credit."). Accordingly, we affirm the Tax Court's conclusion that Morrison's kitchen panel boards constitute tangible personal property and that Morrison's expenditures on the boards qualify for the investment tax credit.

### G. The Primary Electrical Systems.

Morrison's primary electrical systems constitute the most problematic equipment category in this case. Morrison does not operate primary electrical systems in a vacuum; instead, Morrison uses the systems to power other equipment. Nevertheless, the Commissioner urges us to consider the primary electrical systems as autonomous units and argues that the systems constitute structural components of Morrison's cafeteria buildings. The Commissioner also urges us to rely on the Fourth Circuit's *Monk* opinion, which rejected the *Scott Paper* functional allocation approach.

Morrison argues that the Tax Court properly ruled that the government owed it a refund based on the percentage of electricity that the primary electrical systems provide to equipment that otherwise qualifies for the investment tax credit. Morrison urges us to rely on *Scott Paper* and adopt the reasoning of the Seventh Circuit's *Illinois Cereal* opinion, which applied a similar functional allocation approach.*

■ First, we accept Morrison's argument that taxpayers can claim investment tax credit on a percentage basis. In this regard, we adopt the reasoning in *Illinois Cereal* and reject the reasoning in *Monk*. As the *Illinois Cereal* court stated, other courts have permitted taxpayers to claim an investment tax credit by percentage based on property use. *Illinois Cereal*, 789 F.2d at 1242. *See Panhandle Eastern*

*Pipe Line Co. v. United States*, 654 F.2d 35, 42, 228 Ct.Cl. 113 (1981) (personal or entertainment use property partially disqualified from investment tax credit); *Merchants Refrigerating Co. of California v. Commissioner*, 60 T.C. 856, 860 (1973) (portion of structure used for storage not "building" under section 38); *Central Citrus*, 58 T.C. at 370–73 (same).

■ Second, we adopt the Tax Court's method of focusing on the ultimate use of electricity distributed by Morrison's primary electrical systems. Components of primary electrical systems that supply electricity to the overall operation or maintenance of a cafeteria building do not qualify for the investment tax credit. *See Morrison, Inc.*, T.C.M. 1986–129, slip op. at 78–79; *Scott Paper*, 74 T.C. at 183 (citing Treas.Reg. §§ 1.48–1(c), (e)(2)). *See also Central Citrus*, 58 T.C. at 374. Components of primary electrical systems that distribute electricity to non-structural components of Morrison's business, however, qualify for the investment tax credit. We adopt the *Scott* court's language:

> To the extent that the primary electric carried electrical loads to be used for ... production processes or other qualified uses, the investment credit will be allowed for the primary electric improvements.
>
> To the extent that the primary electric improvements relate to the overall production [or] maintenance of buildings, they are structural components of such buildings, and they do not qualify as tangible personal property.

*Scott Paper*, 74 T.C. at 185–86.

Third, the Tax Court's method is consistent with the investment tax credit's purpose. Congress enacted the investment tax credit to provide an incentive for businesses to make capital expenditures that

---

* We note that only *Scott Paper* is directly on point. In *Scott Paper,* the Tax Court analyzed a primary electrical system to determine whether it partially qualified as tangible personal property under section 48(a)(1)(A). The *Illinois Cereal* and the *Monk* courts, however, discussed whether portions of primary electrical systems constituted other tangible personal property under section 48(a)(1)(B). Although the *Illinois Cereal*

court stated at the end of its opinion that the taxpayer's primary electrical system did not constitute tangible personal property, the court did not squarely face the issue. *See Illinois Cereal*, 789 F.2d at 1239 ("[Taxpayer] *does not contend* that its electrical distribution system is 'tangible personal property' under section 48." (Emphasis added)).

**864**

modernize production processes. *See Scott Paper,* 74 T.C. at 167–68 (citing investment tax credit legislative history). A rejection of the functional allocation approach provides an incentive to invest in machinery, but removes the incentive when the taxpayer is forced to invest in an electrical system that permits it to operate that machinery. Such a result would not be consistent with the notion that the investment tax credit "should be construed liberally in light of its purposes." *Illinois Cereal,* 789 F.2d at 1234 (citing *Comdisco, Inc. v. United States,* 756 F.2d 569, 577 (7th Cir.1985); *Commissioner v. Schuyler Grain Co.,* 411 F.2d 649, 652 (7th Cir.1969)).

## VI. CONCLUSION

We conclude that the Tax Court properly ruled that Morrison's expenditures on kitchen hand sinks, garbage rooms, floors, sanitary walls, floor tiles, and serving line concrete curbs do not qualify for the investment tax credit. We conclude that the Tax Court properly ruled that Morrison's expenditures on kitchen panel boards qualified for the investment tax credit. Finally, we conclude that the Tax Court correctly applied a "functional allocation approach" and properly ruled that the government owed Morrison a refund based on a percentage of its primary electrical system expenditures. The order of the Tax Court is affirmed.

AFFIRMED.